**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

**UNITED STATES OF AMERICA**

          **- against -**

**SCOTT TUCKER AND TIMOTHY MUIR,**

               **Defendants.**
------------------------------------------------------------x

                  **16-CR-091 (PKC)**

**JOINT MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTIONS IN LIMINE**


JAMES M. ROTH
Stampur & Roth
299 Broadway, Suite 800
New York, NY 10007
(212) 619-4240

LEE GINSBERG
NADJIA LIMANI

Attorneys for Scott Tucker


THOMAS J. BATH, JR.
Bath & Edmonds, P.A.
Historic Voigts Building
7944 Santa Fe Drive
Overland Park, Kansas 66204
(913) 652-9800

MARC AGNIFILO

Attorneys for Timothy Muir

Beverly Van Ness, Of Counsel
February 17, 2017

# TABLE OF CONTENTS

I.    MOTION TO LIMIT EVIDENCE OF PAY DAY LENDING
      VIOLATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   MOTION TO PROHIBIT IRRELEVANT AND PREJUDICIAL
      EVIDENCE REGARDING THE ALLEGED NEGATIVE IMPACT
      OF LOANS ON BORROWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III.  MOTION TO COMPEL THE GOVERNMENT TO GRANT
      IMMUNITY TO DEFENSE WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

IV.   MOTION TO PRECLUDE EVIDENCE OF BLAINE TUCKER'S
      SUICIDE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**I.      MOTION TO LIMIT EVIDENCE OF PAY DAY LENDING VIOLATIONS**

In paragraph 8 of the superceding indictment, the government alleges that some states

"prohibit payday loans"outright, and that the so-called "Tucker Payday Lenders" did business in

them.  In paragraph 9, the government alleges that the so-called "Tucker Payday Lenders"

violated the usury laws of various states "by failing to obtain a license to operate" as required.

All such violations, or any other alleged violations of state laws related to pay day lending other

than those regulating rates of interest, are outside the scope of the racketeering counts, and are

similarly irrelevant to any of the other charges contained in the indictment.  Accordingly, the

government should be precluded from presenting and relying upon evidence that the entities

associated with pay day lending in this case violated any laws that prohibit pay day lending

outright, or require lenders to obtain a license to operate, or any other laws related to pay day

lending other than those regulating interest rates.

**ARGUMENT**

The defendants are charged in counts one through four with racketeering conspiracy and

substantive racketeering based on their alleged participation in the "collection of unlawful debt."

18 U.S.C. § 1962 (c).  "Unlawful debt" is defined as a debt "which is unenforceable under State

or Federal law in whole or in part as to principal or interest because of laws relating to usury,"

and which was incurred "in the business of lending money . . . at a rate usurious under State or

Federal law, where the usurious rate is at least twice the enforceable rate."  18 U.S.C. § 1961(6).

By its plain terms, the statute proscribes "the charging of interest in excess of that

allowed by law," which is the definition of "usury."  LFG Nat'l Capital, LLC v. Gary, Williams,

Finney, Lewis, Watson, and Sperando, P.L., 874 F.Supp.2d 108, 125 (N.D.N.Y. 2017); see also

Scientific Products v. Cyto Medical Laboratory, Inc., 457 F.Supp. 1373, 1375 (D.Conn. 1978) .

It is a "familiar rule that criminal statutes are to be strictly construed." Yates v. United States,

354 U.S. 298, 310 (1957); see id. at 305.  Congress's words must be given their plain meaning –

"[w]here there is no ambiguity in the words, there is no room for construction."  Id., at 305.  This

is not simply a matter of statutory construction, but of due process.  Dunn v. United States, 442

U.S. 100, 112-13 (1979).

Accordingly, any evidence that the defendants violated the law by doing business in states

which prohibit payday lending (indictment, par.8), or"by failing to obtain a license to operate"

(indictment, par. 9) is irrelevant and should be precluded.  The same argument applies to any

other payday lending violation (e.g., laws setting limits on the amount or length of a loan) other

than charging a "usurious rate" of interest as defined in 18 U.S.C. § 1961(6).  If the violation is

outside this definition, it is outside the scope of the Racketeering Act's "unlawful debt

collection" provision.  See Rivera v. AT&T Corp., 141 F.Supp.2d 719 (S.D. Tex. 2001)

(dismissing civil RICO suit, because excessive late fees charged by cable company did not meet

definition of usury and did not, therefore, constitute an "unlawful debt"); Reidy v. Meritor Sav.,

F.S.B., 705 F.Supp. 39 (D. D.C. 1989) (same, where banks charged more than twice the number

of points allowed by law for mortgage loans; the RICO statute references enforceable "rates,"

which have a different meaning than "points"); see also Durante Bros. & Sons, Inc. v. Flushing

Nat'l Bank, 755 F.2d 239, 249 (2d Cir. 1985) (remanding for determination of whether certain

alleged fees and costs were sole basis for usurious interest rate claim; if so, RICO unlawful debt

collection counts should be dismissed).

Where a defendant's conduct is not "'plainly and unmistakably' proscribed" by the state

law underpinning a RICO allegation – here, state usury statutes – it cannot be the basis of a

RICO conviction. See United States v. Malizia, 720 F.2d 744, 746 (2d Cir. 1983), quoting Dunn

v. United States, supra, 442 U.S. at 112-13. Thus, to establish the defendants' guilt of counts one

through four, the government should be limited to proving its allegation that the entities at issue

unlawfully charged usurious interest exceeding twice the enforceable rate. It cannot rely on, and

should not adduce evidence as to, licensing or other violations of state or federal law.

## II.      MOTION TO PROHIBIT IRRELEVANT AND PREJUDICIAL EVIDENCE REGARDING THE ALLEGED NEGATIVE IMPACT OF LOANS ON BORROWERS

Evidence is relevant if, "it has any tendency to make a fact more or less probable than it

would be without the evidence and *the fact is of consequence in determining the action.*" Fed. R.

Evid. 401. "The court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Fed. R. Evid. 403.

The indictment makes sundry inflammatory allegations irrelevant to elements of the

offense including, but not limited to, that the defendants "systematically exploited…working

people…struggling to pay basic living expenses, including food and housing,"[1] "forced many of

these individuals into cycles of debt," "to reimburse their banks [for negative balances]," and

"forced [customers] to take out new usurious loans…to pay their bills." (Indictment, ¶4, 19).

_____

[1] Mr. Tucker has a pending motion to strike this and similar inflammatory and irrelevant language from the indictment (ECF #98, p. 12)

The alleged impact of the short term loan business on these unidentified borrowers is not relevant to determining whether the defendants knowingly and willfully violated usury law. Whether borrowers suffered from financial hardship has no tendency to make it more likely that the defendants are guilty. Moreover, whether borrowers sought additional loans is not a fact of consequence. FRE 401 prohibits the evidence.

Even if those facts did have minimal probative value, they should nevertheless be precluded by FRE 403. First, the evidence, if true, presents a clear danger of inflaming the passions of the jury – as it is no doubt intended to do. The harm to the purported, unspecified victims incites insights the jury to convict the accused for the alleged results of their conduct, not for the conduct itself. Moreover, it presents a danger of confusing the jury that they must find that borrowers were negatively impacted by this alleged conduct.

If the evidence is deemed admissible, the defendants will need to present evidence confronting those allegations creating a factual issue not captured by the statute: whether borrowers were harmed.

III.  **MOTION TO COMPEL THE GOVERNMENT TO GRANT IMMUNITY TO DEFENSE WITNESSES**

Defendants Scott Tucker and Timothy Muir are charged in a fourteen count superseding indictment related to a group of payday lending businesses: "[a]t all times relevant to [the superseding indictment], the Tucker Payday Lenders held themselves out as separate businesses known as Ameriloan, f/k/a Cash Advance, One Click Cash, f/k/a Preferred Cash Loans, United Cash Loans, US FastCash, 500 FastCash, Advantage Cash Services and Star Cash Processing. However, while each of the Tucker Payday Lenders issued a distinct portfolio of loans, the

Tucker Payday Lenders shared the employees, computer systems and other operating costs and infrastructure of a single ledning business located in Overland Park, Kansas. That business, known as AMG Services, Inc., f/k/a CLK Management, f/k/a National Money Service, Inc. was at all relevant times directly or beneficially owned and operated by SCOTT TUCKER, the defendant. At times, under TUCKER's direction and control, AMG employed over 600 individuals to operate the Tucker Payday Lenders." S1 Indictment, ¶2.

Upon information and belief, the following individuals, if called as witnesses at the trial would invoke their Fifth Amendment privilege against self-incrimination:

1.    Chris Becker

2.    Tim Buckley

3.    Crystal Grote

4.    Natalie Dempsey

5.    Glen Fisher

All of these individuals worked for AMG Services, Inc. Chris Becker worked in the collections department of AMG. Tim Buckley, Crystal Grote and Natalie Dempsey ran the operations and collections departments for AMG. Glen Fisher was Manager of Final Collections for AMG.

## ARGUMENT

Pursuant to 18 U.S.C. §6003(b), a United States Attorney, with the approval of specified officers in the Department of Justice, may request an order when, in the United States Attorney's judgment, the testimony (or other information sought) "may be necessary to the public interest" and the individual has already asserted the Fifth Amendment privilege or is likely to do so. Upon such a request, the district court "shall" issue the order. 18 U.S.C. §6003(a).

While prosecutors enjoy vast discretion in determining whether to provide a witness with testimonial immunity once that person asserts their Fifth Amendment privilege, defendants are not provided with the same luxury. "The ability to give immunity to one witness but not another is a potentially powerful tool for a prosecutor, particularly in light of the prosecutor's ability to create incentives for witnesses to invoke the privilege against self-incrimination. United States v. Dolah, 245 F.3d 98, 106 (2d Cir. 2001), abrogated on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). There are, therefore, limits on the government's use of immunity." United States v. Ebbers, 458 F.3d 110, 118-119 (2d. Cir. 2006)

In Ebbers, the Second Circuit cited a two-pronged test to be used by district courts in assessing whether it would be proper to order the prosecution to choose between forgoing the testimony of immunized witnesses or granting immunity to potential defense witnesses.[2] "First, the defendant must show that the government has used immunity in a discriminatory way, has forced a potential witness to invoke the Fifth Amendment through 'overreaching' or has deliberately denied 'immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation." Id. (citations omitted).

On February 9, 2016, the Government entered into a non-prosecution agreement with AMG Services, Inc. and MNE Services, Inc.,[3] executed by Douglas Lankford, Chairman of the Board of Directors/Chief of the Miami Tribe of Oklahoma and Donya Williams, Secretary-

---

[2] In so doing, the Court cited United States v. Horwitz, 622 F.2d 1101, 1105-06 (2d Cir. 1980), United States v. Dolah, 245 F.3d 98, 105 (2d Cir. 2001) and United States v. Diaz, 176 F.3d 52, 115 (2d Cir. 1999).

[3] MNE Services, Inc. owned and controlled Advantage cash Services, Ameriloan, Star Cash Processing, United Cash Loans and US FastCash (five of the seven payday lending entities listed in the superseding indictment).

Treasurer of the Board of Directors/First Councilperson of the Miami Tribe of Oklahoma. However, upon information and belief, no such non-prosecution agreements have been entered into with Chris Becker, Tim Buckley, Crystal Grote, Natalie Dempsey or Glen Fisher. This selective granting of immunity will deprive the defendants of their right to a fair trial as the Government will have the ability to call witnesses from both AMG Services, Inc. and MNE Services, Inc. and the defense, due to 5th Amendment assertions, will not.

A core component of the Government's case and basis for the wire fraud and wire fraud conspiracy counts, is that Scott Tucker and Timothy Muir, through the use of AMG employees, made material misrepresentations to potential and current customers of the payday lending entities "concerning the true cost of payday loans offered by the Tucker Payday Lenders and the identity of the lender offering the loans in order to induce customers to obtain the loans and to make payments on the loans exceeding the amounts allowed by law and the amounts which the customers were told they were required to pay." S1 Indictment, ¶47.

Without the testimony of witnesses who, for example, were in charge of the operations and collections departments at AMG and therefore have probative testimony regarding the allegations in the fraud counts (among other topics), defendants will undoubtedly be at a disadvantage. Therefore, it can be inferred that the Government has selectively granted immunity in this matter to gain a tactical advantage over the defendants.

The second prong of the test referenced supra is that "the defendant must show that the evidence to be given by an immunized witness will be material, exculpatory and not cumulative and is not obtainable from any other source…The bottom line at all times is whether the non-

immunized witness's testimony would materially alter the total mix of evidence before the jury."
Ebbers, 458 F.3d at 119.

Here, as described supra the witnesses in question worked, and in the case of Ms. Grote, Mr. Buckley and Ms. Dempsey ran the operations and collections departments of AMG. They therefore have direct knowledge of not only the customers' interactions with customer representatives but of the policies and procedures guiding such interactions. Such testimony would be relevant, material and exculpatory as to the wire fraud counts as it would disprove the Government's contentions regarding material misrepresentations made by the defendants through AMG employees.

For the above-stated reasons, the Court should issue an order directing the government to provide testimonial immunity to Chris Becker, Tim Buckley, Crystal Grote, Natalie Dempsey and Glen Fisher.

## IV.     MOTION TO PRECLUDE EVIDENCE OF BLAINE TUCKER'S SUICIDE

On March 9, 2014, Blaine Tucker, the brother of defendant Scott Tucker, committed suicide. At that time, Blaine Tucker was a named defendant in some civil actions involving pay day lending.

In an abundance of caution, Mr. Tucker moves to preclude the government from introducing evidence that Blaine Tucker died at his own hand. It does meet the test of relevancy under Fed.R.Evid. 401. There is no evidence that Blaine's death was connected in any way to the pending civil suits, which had been filed long before. Necessarily, the act can have no bearing on

Scott Tucker's guilt in this case. This evidence is accordingly inadmissible. <u>See</u> Fed.R.Evid.

402 ("Irrelevant evidence is inadmissible").

There is a danger, however, that jurors learning of the suicide will infer that it resulted

from Blaine's consciousness of guilt as to the allegations charged in the civil suits. Such

unwarranted speculation would unfairly prejudice the defendants, and confuse the issues properly

before the jury. Proof that Blaine Tucker killed himself should accordingly be excluded under

Rule 403 as well. Blaine Tucker may well be mentioned at trial, and the fact that he is dead may

be elicited. But there should be no mention of how he died.

**CONCLUSION**

For the reasons stated, the defendants respectfully asks this Court to grant the

relief requested.

/s/ 
JAMES M. ROTH
on behalf of Scott Tucker


/s/ 
THOMAS J. BATH, JR.
on behalf of Timothy Muir