UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

UNITED STATES OF AMERICA,


     -against-                          S1 16-CR-91 (PKC)

SCOTT TUCKER AND TIMOTHY MUIR,

                 Defendants.
------------------------------------------------X


## DEFENDANTS SCOTT TUCKER AND TIMOTHY MUIR'S REQUESTS TO CHARGE AND OBJECTIONS TO THE GOVERNMENT'S REQUESTS TO CHARGE

JAMES M. ROTH
Stampur & Roth
299 Broadway, Suite 800
New York, NY 10007
(212) 619-4240

LEE GINSBERG
NADJIA LIMANI

*Attorneys for Scott Tucker*


THOMAS J. BATH, JR.
Bath & Edmonds, P.A.
Historic Voigts Building
7944 Santa Fe Drive
Overland Park, Kansas 66204
(913) 652-9800

MARC AGNIFILO

*Attorneys for Timothy Muir*

Beverly Van Ness, Of Counsel
February 17, 2017

# TABLE OF CONTENTS

**Page**

Request No. 1 – Function of Court and Jury…………………………………………… 1

Request No. 2 – Indictment not Evidence ………………………………….......... 2

Request No. 3 – Statements of Counsel Not Evidence …………………………… 3

Request No. 4 – Jury's Recollection Controls …………………………………… 4

Request No. 5 – Consideration of Evidence …………………………………….. 5

Request No. 6 – Reasonable Doubt………………………………………….......... 6

Request No. 7 – Presumption of Innocence and Burden of Proof……….……….. 7-8

Request No. 8 – Inference Defined……………………………………………….. 9

Request No. 9 – Credibility of Witnesses………………………………………… 10-11

Request No. 10 – Demeanor Evidence (to be added to the Court's Instruction
on witness credibility) …………………………………………………….... 12

Request No. 11– Defendant's Election Not to Testify …………………………… 13

Request No. 12 – Credibility of Immunized Witness……………………………… 14

Request No. 13 – Cooperating Witnesses ………………………………………… 15-16

Request No. 14 – Consideration of Witness' Guilty Pleas ……………………… 17

Request No. 15 – Prior Inconsistent Statements………………………………… 18

Request No. 16 – Testimony of a Perjurer………………………………………… 19

Request No. 17 – Typewritten Transcripts from Tape-Recorded Conversations….. 20

Request No. 18 – Consider Each Count and Each Defendant Separately ………… 21

# TABLE OF CONTENTS

**Page**

Request No. 19 – Exhibits During Deliberations………………………………….    22

Request No. 20 – Charts and Summaries…..……………………………………….    23

Request No. 21 – Notes……………………………………………………………….    24

Request No. 22 – Law Enforcement Witnesses ………………………………….    25

Request No. 23 – Expert Witnesses ………………………………………………….    26

Request No. 24 – Lawyers' Objections…………………………………………….    27

Request No. 25 – Duty to Deliberate/Unanimous Verdict …………………………    28

Request No. 26 – Counts One through Four: Introduction to RICO Claims ……….  29-30

Request No. 27 – Order of RICO Counts…………………………………..............    31

Request No. 28 – Request to Charge Mens Rea Element of Willfulness for RICO
                Counts One through Four………………………………………..  32-37

Request No. 29 – Count One: General Instructions on RICO Conspiracy………….    38

Request No. 30 –   Count One: RICO Conspiracy……………………………….. 39-41

Request No. 31 – Counts Two through Four: RICO-Collection of Unlawful Debt….42-45

Request No. 32 – Relevant Law Pertaining to Tribal Sovereignty…………………..  46

Request No. 33 – Relevant Law Pertaining to Tribal Sovereign Immunity…………  47

Request No. 34 – Law Enforcement Witnesses……………………………………..   48

Request No. 35 – Good Faith Reliance upon Advice of Counsel …………………..  49

Request No. 36 – Supplemental Requests (Theory of Defense Charges)…………..    50

Objection to Government Request 8………………………………………………..   51

Objection to Government Request 9………………………………………………..   52-53

# TABLE OF CONTENTS

**Page**

Objection to Government Request 41………………………………………….. 54

Objection to Government Request 42…………………………………… 55-56

Conclusion…………………….………………………………… 57

Defendants Scott Tucker and Timothy Muir respectfully submit the following requests to charge and objections to the Government's requests to charge. Defendants do not object to the Government's requests to charge relating to Counts Five though Fourteen (Requests 10 to 29). However, Defendants reserve the right to object to the Government's requested charge regarding conscious avoidance (Request No. 31) as it is inconsistent with the Government's theory of the case. Additionally, Defendant respectfully reserve the right to submit additional requests and/or objections to the Government's requests relating to the Government's case-in-chief, the defense theory of the case, as well as other matters.

<u>**REQUEST NO. 1**</u>

**FUNCTIONS OF COURT AND JURY**

Members of the jury, I will now instruct you on the law that you must follow in deciding this case. I will also give you a copy of these instructions to use in the jury room. You must follow all of my instructions about the law, even if you disagree with them. This includes the instructions I gave you before the trial, any instructions I gave you during the trial, and the instructions I am giving you now.

As jurors, you have two duties. Your first duty is to decide the facts from the evidence that you saw and heard here in court. This is your job, not my job or anyone else's job.

Your second duty is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendants guilty beyond a reasonable doubt.

You must perform these duties fairly and impartially. Do not let sympathy, prejudice, fear, or public opinion influence you. In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.

You must not take anything I said or did during the trial as indicating that I have an opinion about the evidence or about what I think your verdict should be.

Pattern Federal Jury Instructions, 7th Circuit, §1.01

1

**REQUEST NO. 2**

**INDICTMENT IS NOT EVIDENCE AND NO SPECIAL CONSIDERATION TO GOVERNMENT**

The indictment is not evidence. It is nothing more than a set of accusations, a statement of what the government intends to prove by offering evidence at trial. It gives the defendant notice of the charges against them and informs the court and the public of the nature of the accusation. As such, you cannot convict a person of any crimes that are not charged in the indictment.

Since the indictment is not evidence and since it does not purport to prove or even indicate evidence against any defendant, you are to give no weight whatsoever to it. Every defendant begins trial with an absolutely clean slate and without any evidence against him. Remember that those are merely accusations. What matters is the evidence, or lack thereof, that you heard in the trial.

The fact that this case, this prosecution, is brought in the name of the United States Government does not entitle the United States to any greater consideration that the defendant are entitled to. By the same token, the United States is entitled to no less consideration than the defendants are entitled to. Each is entitled to your fair and undivided consideration. Neither a defendant nor the government is entitled to any special consideration, any special sympathy or any special favor.

Instruction given in *United States v. Badalamenti*, SS 84 Cr. 236 (S.D.N.Y. Feb. 24, 1987) (Leval, J.).
Adapted from the instruction given by Judge Glasser in *United States v. Mahaffy*, 05 Cr 613 (ILG).

## REQUEST NO. 3

**STATEMENTS OF COUNSEL ARE NOT EVIDENCE**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; the stipulations that the lawyers agreed to; and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Pattern Jury Instructions, Sixth Circuit, §1.04; Approved *United States v. Wilson*, 168 F.3d 916, 924 n.6 (6th Cir. 1999).

## REQUEST NO. 4

**JURY'S RECOLLECTION CONTROLS**

If any reference by the Court or counsel to matters of testimony or exhibit does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judge of the evidence received in this case.

O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions, 6th Edition,* 2008, §12:07

**REQUEST NO. 5**

**CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Pattern Jury Instructions, 6th Circuit, §1.05
*Turner v. United States*, 396 U.S. 398, 406-407 (1970) (the jury may consider its own store of knowledge, must assess for itself the probative force and the weight, if any, to be accorded the evidence, and is the sole judge of the facts and the inferences to be drawn therefrom); *Holland v. United States*, 348 U.S. 121, 140 (1954) (the jury must use its experience with people and events in weighing the probabilities); *United States v. Jones*, 580 F.2d 219, 222 (6th Cir. 1978) (the jury may properly rely upon its own knowledge and experience in evaluating evidence and drawing inferences).

## REQUEST NO. 6

**REASONABLE DOUBT**

The law requires the government to prove the defendant's guilt beyond a reasonable doubt. The test is one of reasonable doubt. A defendant is never to be convicted based on mere suspicion or conjecture.

A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act in matters of utmost importance. It is not caprice, whim, it is not sympathy, nor an excuse to avoid performance of an unpleasant duty. Proof beyond a reasonable doubt must be proof of such a convincing nature that a reasonable person would confidently rely and act upon it in the most important of his or her own affairs.

Now, you may ask how a reasonable doubt can arise. A reasonable doubt can arise from the lack or insufficiency of evidence, from your disbelief or doubt as to the accuracy or honesty of testimony or the genesis of documents, or from conflicting evidence. A reasonable doubt can arise also if the inferences upon which the government's proof relies are not sufficiently convincing. It can arise in other ways as well.

Proof beyond a reasonable doubt is proof that is supported by what you confidently believe to be accurate testimony or logical inferences from proven facts. It is the quality, not the quantity, of the proof that matters.

Devitt & Blackmar, Devitt & Blackmar, *Federal Jury Practice and Instructions,* §11.14; *United States v. Ivic*, 700 F.2d 51 (2d Cir. 1983); Instruction given in *United States v. Badalamenti*, SS 84 Cr. 236 (S.D.N.Y., Feb. 24, 1987) (Leval, J.)

**PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF**

Closely related to the doctrine of reasonable doubt is the concept of the presumption of innocence.

The defendants before you have pleaded not guilty. In doing so, the defendants each deny each and every allegation charged against them. That means that the government has the burden of proving what is charged in the indictment.

The government must prove each and every element of each charge beyond a reasonable doubt. You may not find a defendant guilty on any count unless the evidence proves to you beyond a reasonable doubt that the defendant committed the offense charged. While you may find a defendant guilty of an offense if the government has proven the elements of such offense beyond a reasonable doubt, you must acquit the defendant of that offense if the government has not met its burden.

A defendant does not have to prove anything. The law never imposes upon a defendant in a criminal case the burden of calling any witnesses or producing any evidence. On the contrary, each defendant is presumed to be innocent. Neither is required to call any witnesses or introduce any evidence whatsoever. It is the government that must prove the case to you and must do so by proving beyond a reasonable doubt each and every element of the crimes charged in the indictment.

The presumption of innocence is not a mere formality. Each juror is bound to entertain it conscientiously and to give the defendants the full benefit of the presumption of innocence. The point is that the presumption of innocence continues in the defendant's favor throughout the entire trial and remains there in the jury room until you have finally

resolved it, if you ever do so.

It means this: right up to the last minute your discussions should include the proposition that the government has the burden of proof, and if the government has not sustained that burden, the presumption of innocence in and of itself would have to be the basis of a reasonable doubt. Consequently, you must return a verdict of acquittal unless the evidence has proven the guilt of either or both of the defendants beyond a reasonable doubt.

Instruction given in *United States v. Coonan*, S 87 Cr. 249 (S.D.N.Y. Feb. 1988) (Knapp, J.); Instruction given in *United States v. Badalamenti*, SS 84 Cr. 236 (S.D.N.Y. Feb. 24, 1987) (Leval, J.)

**REQUEST NO. 8**

**INFERENCE DEFINED**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

The process of drawing inferences from facts is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw — but are not required to draw — from the facts which have been established by the evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented, you are permitted, from the facts which you find to be proven, such reasonable inferences as would be justified in light of common sense and experience. You are not, however, permitted to speculate or guess.

Adapted from Sand, Siffert, Loughlin and Reiss, *Modern Federal Jury Instructions*, Instruction 6- 1 (1993).

## REQUEST NO. 9

**CREDIBILITY OF WITNESSES**

**I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.**

You are the sole judges of the credibility or believability of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should decide whether you believe all, some part, or none of what each person had to say, and how important that testimony was. In making that decision I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few of the considerations that will help you determine the accuracy of what each witness said.

[The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say. In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than on the other. Do not reach a conclusion on a particular point just because there were more wit- nesses testifying for one side on that point. You will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Pattern Jury Instructions, 5th Circuit; §1.08; modified from 10th Circuit pattern instructions

**DEMEANOR EVIDENCE**
**(TO BE ADDED TO THE COURT'S INSTRUCTION ON <u>WITNESS</u>**
**<u>CREDIBILITY</u>)**

In assessing the credibility of any witness, you should be aware that the law provides that a jury is free, based on a witness's demeanor, to assume the truth of what he denies. Thus, if a witness denies the truth of a particular assertion or statement, and you believe that his demeanor indicates that his denial is false, you may, but you are not required to, assume the truth of what the witness has denied.

*United States v. Marchand*, 564 F.2d 983, 985-86 (2d Cir. 1977) (Friendly, J.*), quoting*
*Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) (Hand, J.).

## REQUEST NO. 11

**DEFENDANT'S ELECTION NOT TO TESTIFY**

Let me turn now to another principle of the utmost importance

Every defendant in a criminal case has the right to elect not to give testimony. The law does not compel a defendant in a criminal case to take the witness stand and testify. This is because, under our Constitution, the defense has no obligation to present any evidence -- it is the prosecution's burden to prove the defendant guilty beyond a reasonable doubt. Consequently, if a defendant elects to exercise that right, it is your absolute obligation to draw no inference of any sort from the fact that he has not testified.

You are not to speculate why a defendant did not testify or about what he might have said if he had elected to testify.

You are to confine your deliberations exclusively to the question of whether or not - on the evidence actually before you - the government has proven beyond a reasonable doubt the guilt either or both of the defendants.

I repeat that you may not attach any significance to a defendant's decision not to testify. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. That burden is with the government throughout the trial.

Adapted from Devitt & Blackmar, Devitt & Blackmar, *Federal Jury Practice and Instructions*, §17.13; and the instructions given in *United States v. Odings*, SSS 82 Cr. 312 (S.D.N.Y.) (Duffy, J.); and *United States v. Coonan*, S 87 Cr. 249 (S.D.N.Y. Feb., 1988) (Knapp, J.).

## REQUEST NO. 12

**CREDIBILITY OF IMMUNIZED WITNESS**

The testimony of an immunized witness, someone who has been told either that his crimes will go unpunished in return for his testimony or that his testimony will not be used against him in return for that cooperation with the government, must be examined and weighed by the jury with greater care than the testimony of someone who is appearing in court without the need for such an agreement with the government.

Mr. _____ may be considered an immunized witness in this case.

The jury must determine whether the testimony of an immunized witness has been affected by self-interest, or by the agreement he has made with the government, or by his own interest in the outcome of this case, or by prejudice against a defendant.

O'Malley, *supra*, §15.03

## REQUEST NO. 13

**COOPERATING WITNESSES**

In this case you have heard testimony from government witnesses who, after entering into an agreement with the government, pled guilty to crimes they committed and were promised that they would not be further prosecuted for other crimes they committed. According to the evidence, pursuant to their agreements, the individuals agreed to testify and that the government has agreed to write a letter on behalf of each individual to bring their cooperation to the attention of the Court that would sentence them.

The government is permitted to enter into these types of plea agreements with witnesses such as_____. The law lays down several rules to guide you in the treatment of such cooperating witnesses.

First, if you come to the conclusion that a cooperating witness has given reliable testimony, you should act on it as you would any other testimony you find to be believable.

However, the law imposes upon you stringent requirements as to how you should evaluate such testimony before concluding it to be reliable. You must examine the testimony of such witnesses with caution and weigh it with great care. You should bear in mind that a witness who has entered into a cooperation agreement has an interest in this case different from that of an ordinary witness. A witness who realizes that he may be able to receive a lighter sentence by giving testimony which is favorable to the government, may have a motive to testify falsely. The law requires that you scrupulously examine the cooperating witness' motives in persuading the government to accept him as a witness rather than include him at this trial.

In this regard, you should consider the benefits, if any, promised by the government to the witness. Another important matter to consider is not so much the risks the witness may incur by departing from the truth, but the witness' perception of those risks. In this connection, a witness might well consider that since the government, as a practical matter, is the only party to this litigation that could call him to account for any misstatements in his testimony, he would be on safer ground erring in the government's favor rather than in the defendant's. On the other hand, he or she might not have any such view. The important thing is to assess the witness' perception of what the government expects of him.

Adapted from the instruction given in *United States v. Coonan,* S 87 Cr. 249 (S.D.N.Y., Feb., 1988) (Knapp, J.); and *United States v. Badalamenti*, SS 84 Cr. 236 (S.D.N.Y., Feb. 24, 1988) (Leval, J.).

**CONSIDERATION OF WITNESS' GUILTY PLEAS**

You have heard testimony from witnesses or about individuals who have pled guilty to charges arising out of the same alleged circumstances in this case. You must draw no inference about the guilt of any defendant in this case because somebody else, a witness or another individual, pled guilty to similar charges. That witness's decision to plead guilty was a decision which was personal to that witness about his or her own guilt. It may not be considered by you,

in any way, as evidence against the defendant on trial.

Adapted from the instruction given by Judge Glasser in *United States v. Mahaffy*, 05 Cr 613 (ILG).

**REQUEST NO. 15**

**PRIOR INCONSISTENT STATEMENTS**

You have heard evidence that certain witnesses made statements on earlier occasions which counsel argues are inconsistent with the witness' trial testimony. Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence. Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that any witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency that appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight should be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

Instruction given in *United States v. Coonan*, S 87 Cr. 249 (S.D.N.Y. Feb. 1988) (Knapp, J.)

## REQUEST NO. 16

**TESTIMONY OF A PERJURER**

I instruct you that if a witness is shown to have lied about any material matter in this trial, you have the right to conclude that the witness also lied about other matters. You may either disregard all of that witness' testimony, or you may accept whatever part of it you think deserves to be believed.

Adapted from Sand, Siffert, Loughlin and Reiss, *Modern Federal Jury Instructions*, Instructions No. 7-17 and 7-18 (1987).

# REQUEST NO. 17

## TYPEWRITTEN TRANSCRIPTS OF TAPE RECORDED CONVERSATIONS

Tape recordings of conversations have been received in evidence and [are about to be][have been] played for you. Typewritten transcripts of these tape recorded conversations [are about to be][have been] furnished to you. These typewritten transcripts of the conversations are being given to you solely for your convenience in assisting you in following the conversation or in identifying speakers.

The tapes themselves are evidence in the case and the typewritten transcripts are not evidence. What you hear on the tapes is evidence. What you read on the transcript is not. If you perceive any variation between the two, you will be guided solely by the tapes and not by the transcripts.

If you cannot, for example, determine from the tape recording that particular words were spoken or if you cannot determine from the tape recording who said a particular word or words, you must disregard the transcripts insofar as those words or that speaker are concerned.

See *United States v. Rosa*, 17 F.3d 1531, 1548 (2d Cir.), *cert. denied,* 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994).

## REQUEST NO. 18

**CONSIDER EACH COUNT AND EACH DEFENDANT SEPARATELY**

A separate crime is alleged against each of the defendants in each count of the indictment. Each alleged offense, and any evidence pertaining to it, should be considered separately by the jury. The fact that you find one defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that defendant or against any other defendant.

You must give separate and individual consideration to each charge against each defendant.

O'Malley, *supra*, §12:13; See *United States v. MacQueen*, 596 F.2d 76, 69 (2d Cir. 1979)

## REQUEST NO. 19

**EXHIBITS DURING DELIBERATIONS**

I am not sending the exhibits which have been received in evidence during the trial with you as you retire for your deliberations.  You are entitled, however, to see any or all of these exhibits as you deliberate and consider your verdict.

I suggest that you begin your deliberations and then, if it would be helpful to you, simply ask for any or all of the exhibits by sending a signed note from your foreperson to me through the bailiff.

O'Malley, *supra*, §20.04

**REQUEST NO. 20**

**CHARTS AND SUMMARIES**

Some of the exhibits that were admitted into evidence were in the form of charts or summaries. I have decided to admit these charts in place of, or in addition to, the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

There have also been a number of summary charts and exhibits introduced merely as summaries or analyses of testimony and documents in the case. The charts and exhibits act as visual aids for you. They are not, however, evidence in themselves. They are graphic demonstrations of underlying evidence. It is the underlying evidence and the weight which you attribute to it which gives value and significance these charts.

To the extent that the charts conform to what you determine the underlying facts to be, you may accept them. To the extent that the charts differ from what you determine the underlying evidence to be, you should reject them. It is for you to decide whether the charts, schedules, or summaries correctly present the information contained in the testimony and in the exhibits on which they were based.

Adapted from the charge of the Honorable Richard J. Sullivan in *United States v. Peirce*, 06 Cr. 1032 (RJS) (S.D.N.Y. 2008), and from Sand, *et. al*., Instr. 5-12.

## REQUEST NO. 21

**NOTES**

Many of you have taken notes periodically during this trial. I want to emphasize to you, as you begin your deliberations, as I said before, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions should be drawn from such evidence.

Any difference between a juror's recollections and another juror's notes should be settled by asking to have the court reporter read back the testimony, for it is the court's record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

Adapted from the charge of the Honorable Richard J. Sullivan in *United States v. Peirce*, 06 Cr. 1032 (RJS) (S.D.N.Y. 2008).

**REQUEST NO. 22**

**LAW ENFORCEMENT WITNESSES**

You have heard the testimony of a law enforcement official. The fact that a witness may be employed by the government as a law enforcement official does not mean that *his* or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. As with other witnesses, you may consider whether that person's testimony is colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all of the evidence, to give the testimony of a law enforcement witness whatever weight, if any, you find it deserves.

Adapted from the charge of the Honorable Richard J. Sullivan in *United States v. Peirce*, 06 CR 1032 (RJS) (S.D.N.Y. 2008).

## REQUEST NO. 23

**EXPERT WITNESS**

You have heard testimony from [name] who testified to opinions and the reasons for his opinions. This opinion testimony is allowed because of the education or experience of this witness. Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Manual of Modern Jury Instructions, 9th Circuit, §4.14
Comment See Fed. R. Evid. 701-05. See also United States v. Mendoza, 244 F.3d 1037, 1048 (9th Cir.2001) (instruction should be given when requested by the defendant). This instruction avoids labeling the witness as an "expert." If the court refrains from designating the witness as an "expert," this will "ensure[] that trial courts do not inadvertently put their stamp of authority" on a witness's opinion and will protect against the jury's being "overwhelmed by the so-called 'experts.'" See Fed. R. Evid. 702 advisory committee's note (2000) (quoting Hon. Charles Richey, Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials, 154 F.R.D. 537, 559 (1994).

**REQUEST NO. 24**

**LAWYERS' OBJECTIONS**

There is one more general subject that I want to talk to you about before I begin explaining the elements of the crime charged.

The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  Those rules are designed to make sure that both sides receive a fair trial.

And do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.  Remember that your decision must be based only on the evidence that you saw and heard here in court.

Pattern Jury Instructions, 6th Circuit, §1.09

# REQUEST NO. 25

**DUTY TO DELIBERATE/UNANIMOUS VERDICT**

You now will retire to decide the case. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must determine for yourself whether the government has proved its case, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.

Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Adapted from charge given in <u>United States v. Ida</u>, 96 CR 430 (S.D.N.Y. 1997) (Kaplan, J.)

28

**COUNTS ONE THROUGH FOUR: Introduction to RICO Counts**

Count One charges each defendant with conspiring to conduct or participate in the affairs of an enterprise through the collection of unlawful debt, and Counts Two through Four charge each defendant with conducting or participating in the affairs of an enterprise through the collection of unlawful debt. Thus, Count One charges a conspiracy to violate Section 1962(c) of the Federal Criminal Code, which makes it a crime for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through the collection of unlawful debt. Counts Two through Four charge substantive violations of this statute, through the actual collection of unlawful debt in specified jurisdictions. These federal racketeering laws are commonly referred to as "RICO."

The word "racketeering" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven. The term is only a word used by Congress to describe the statute.

The term "unlawful debt," as used in these instructions, means a debt which was unenforceable in whole or in part under federal or state law because of the laws relating to usury, and which was incurred in connection with the business of lending money or any thing of value at a rate that was usurious under federal or state law, where the rate was at least twice the legally enforceable rate.

Usury is the lending of money at an illegally high rate of interest.

Adapted from Sand, Modern Federal Jury Instructions, Instr. 52-18 (prejudice from the word "racketeering"), and Instr. 6.18.1962C-9 ("unlawful debt" defined).

**ORDER OF RICO COUNTS**

The RICO conspiracy count references many terms with which the jurors will be unfamiliar, and their determination of the defendants' guilt or non-guilt of the conspiracy charge will depend on their understanding of the substantive offense – the collection of unlawful debt, which is also not familiar to laymen (unlike more "common" criminal offenses such as murder and robbery). Accordingly, we ask the Court to charge on the substantive RICO offenses first (Counts Two through Four), and then on the RICO conspiracy count (Count One).

**REQUEST NO. 28**

**Request to Charge Mens Rea Element of Willfulness for RICO Counts One through Four**

The government's proposed jury instructions for the racketeering conspiracy and substantive racketeering counts contain no <u>mens rea</u> element. Thus, its charge authorizes a conviction of serious felony offenses if the jurors find that even a single loan met the statutory definition of "unlawful debt," and that the defendants participated in its collection.

Strict liability is disfavored in the criminal law, as it raises significant due process concerns. <u>Conn. Bar Ass'n v. United States</u>, 620 F.3d 81, 102 (2d Cir. 2010). Indeed, there is "a presumption that <u>mens rea</u> is required." <u>United States v. United States Gypsum Co.</u>, 438 U.S. 422, 437 (1978). This is particularly important when the offense at issue is a serious one, punishable by a lengthy prison sentence. <u>Staples v. United States</u>, 511 U.S. 600, 616 (1994). Here, the defendants are facing terms of imprisonment of up to 20 years for each RICO count. <u>See</u> 18 U.S.C. § 1963.

In <u>United States v. Biasucci</u>, 786 F.2d 504 (2d Cir. 1986), a straightforward extortion and RICO prosecution which included the collection of unlawful debts, the Court looked to the <u>scienter</u> element of New York's criminal usury statute: a person is guilty when, "not being authorized or permitted by law to do so, he knowingly charges" more than 25% interest on a loan. 786 F.2d at 512. The Court held that while the government did not have to prove that the defendants had knowledge of "the specific rates being charged on usurious loans," it was still required to establish "that the defendant acted knowingly, willfully and unlawfully." <u>Id.</u> at 513. This was in keeping with the District Court's charge, which was upheld. The jury had been instructed it could convict only on a

finding that the defendants had acted "knowingly, wilfully, and unlawfully" in participating in, or aiding or abetting, the collection of an unlawful debt. This burden could be met either by showing the defendants' specific knowledge of the interest rates charged or their "awareness 'of the generally unlawful nature of the particular loan in question and also that it was the practice of the lenders to make such loans.'" Id. at 512.

Biasucci thus explicitly authorizes the Court to instruct the jury that to sustain its burden of proof, the government must prove the defendants acted "knowingly, willfully and unlawfully." A requirement that a defendant acted "willfully," as set forth in Sand, Modern Federal Jury Instructions, Instr. 3A-3, permits the defendants to raise a good faith defense. See id. The defendants will put forth evidence supporting their good faith belief that federally-recognized Indian tribes could make the loans at issue here without being subject to state usury laws because of the inherent sovereignty of federally-recognized tribes, and Mr. Tucker could lawfully provide services to these tribal lending entities operating as arms of the tribes. Because the loans at issue were made pursuant to codified tribal law, they do not constitute "unlawful debt" for RICO purposes. The nature of this evidence of good faith is not relevant here, but suffice it to say that the Court of Appeals has leant some support to the defense. See Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Serv., 769 F.3d 105, 111 (2d Cir. 2014) (noting, when upholding the denial of plaintiffs' request for a preliminary injunction, "plaintiffs argue that New York lacks the authority to enforce its [usury] laws against tribal [pay day] lenders (and they may be right in the end)") (emphasis added).

The government has acknowledged that good faith will be heart of the defense: "[Mr. Tucker] intends to argue that he believes that his lending practices were lawful and therefore that he did not knowingly or intentionally commit any crime;" and "the defendants are expected to take the position that they believed that their operation of the

Tucker Payday Lenders and the nominal ownership of the Tucker Payday Lenders by tribal corporations lawfully permitted them to charge and collect interest in excess of the interest rates allowed under state usury laws" (ECF #129, pp. 14-15 of 69). Indeed, it is precisely because the defendants' knowledge and intent are at issue that the government seeks to admit evidence of Mr. Tucker's prior convictions. Id.

As noted, in Biasucci, the Court reviewed New York's criminal usury statute, which contains a "knowingly" mens rea. The defendants' good faith was not an issue there, and despite the state statute, the Court endorsed the District Court's instruction that, to be convicted of collection of an unlawful debt, the government had to prove the defendant acted "knowingly, willfully and unlawfully." That the Court cited New York's usury statute is not surprising, because there was no suggestion or argument that the "lending" at issue in that case occurred any place other than in New York, involved nation-wide consumer lending, or that the parties contracted for the application of another forum's laws. That is not true in this case, which is additional support – beyond the Court of Appeal's endorsement of a willful scienter element in RICO unlawful debt collection prosecutions – for why the New York's Legislature's choice of "knowingly" may not be used to preclude defendants' good faith defense.

Here, the loans at issue were made to borrowers all over the country. As the government knows, only a small percentage of the total loans were extended to New York residents – approximately 7%. Furthermore, none of the tribes whose loans are the subject of this indictment made loans in New York beginning in 2014, two full years prior to the filing of the indictment.

Accordingly, to determine the appropriate mens rea element for the RICO crimes charged in this case, the Court should look to choice of law principles. Cf. White Plains

Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) ("a choice of law analysis is necessary because the elements of tortious interference with contract in the relevant states differ").  Such analysis is unusual in criminal cases, but not unheard of.  See, e.g., United States v. Simpson, 520 F.3d 531, 535 (6th Cir. 2008) (choice of law analysis in context of suppression hearing).   New York applies a "most significant interest" test for torts, see White Plains Coat, supra, 460 F.3d at  284, and a similar "most significant contacts" test for contracts.  See In re Chateaugay Corp., 150 B.R. 529, 540 (Bk.Ct. S.D.N.Y. 1993), citing Auten v. Auten, 308 N.Y. 155 (1954).

As applied here, Mr. Tucker's service business was located in Kansas. Importantly, Kansas has no criminal usury statute, and, thus, no scienter element in its usury statute.  See K.S.A. §16-207. Significantly, however, Kansas's Consumer Credit Code contains a good faith defense to any claimed violation of the act: If the creditor established by a preponderance "that a violation is unintentional or the result of a bona fide error of law or fact . . . no liability is imposed ." K.S.A. § 16a-5-201(7).  The tribal lenders at issue in this case, while located in Nebraska and Oklahoma, have their own sovereign laws regarding the subject lending, and their acts and codes authorize making the loans made here at the rates charged, as well as incorporate their own choice of law analysis.[1]

Turning to the borrowers, they were located all over the country as the government is well aware.  And not only was New York's overall proportion of loans small, it was also not the state with the most contracts.  A higher percentage of loans were extended to borrowers in California, Texas and Florida.  Texas has no criminal usury law, but the other two states do, each requireing a willful mens rea for conviction.  Cal.Civ.Code §1916.12-3(b);  Fla. Stat. §687.071(2), (3) (wilfully and knowingly).  Of the eight states that comprise over 50% of the loans, three have no criminal usury law (Texas, North Carolina

---

[1] We are in the process of obtaining all of the relevant tribal statutes.

and Illinois), three require at least a willful scienter (California and Florida, as noted above, and Oklahoma (14A Okl. St. 5-301[1]), and Pennsylvania requires "knowingly and intentionally." 41 P.S. § 505(a). Of this group, only New York's statute has a "knowing" meas rea. Indeed, a majority of the states with criminal usury statutes require wilfulness or intent for conviction (Alabama, California, Florida, Georgia, Hawaii, Kentucky, Louisiana, Maine, Mississippi, Oklahoma, Pennsylvania, Rhode Island, South Carolina, West Virginia, Wyoming and Washington, D.C.). And no state's penalties are as severe as those authorized for racketeering offenses.

In sum, the government's attempt to impose strict liability on the defendants for alleged collection of unlawful debts must be rejected. So, too, should the use of a "knowingly" element, to the extent that that would preclude defendants from raising a good faith defense to the RICO charges. New York is not the jurisdiction with the most significant contacts to the national loan business at issue here, and it is essentially a matter of happenstance that this prosecution is being brought in the Southern District of New York. It could have been brought virtually anywhere, and to seize on the scienter of New York's criminal usury statute, and use that to deny the defendants their defense, would encourage prosecutorial forum shopping. Worse, it would deny defendants due process. Charging usurious interest rates carry\ies no criminal penalties of any sort in many jurisdictions, and many states that do criminalize usury designate the offense as a misdemeanor only. As noted, the defendants here face up to 20 years in prison for each charged RICO violations. In accord with the majority of states that criminalize analogous conduct, this Court should require the government to prove the defendants acted knowingly, willfully and unlawfully, and not in good faith.

Finally, it bears repeating that the defendants would not impose a burden on the government of establishing their awareness of the precise rates charged in the loans, or the

usury cap limits of any state.  We acknowledge the maxim that ignorance of the law is no excuse, and it is not ignorance of prescriptions against charging excessive interest that is at issue here.  Rather, the defendants will contend that they did not believe the loans were subject to state usury laws, New York's or that of any other jurisdiction, because they held a good faith belief that the respective tribal laws were enforceable as to the loans at issue. To prove their guilt, then, the government must prove – as they have alleged in the indictment – that the defendants lacked good faith, and acted with knowledge that their conduct was unlawful.  That is the heart of a willful violation.  See, e.g., Bryan v. United States, 524 U.S. 184, 191-93 (1998); United States v. Homa Int'l Trading Corp., 387 F.3d 144, 147 (2d Cir. 2004).

## REQUEST NO. 29

**COUNT ONE: General Instructions on RICO Conspiracy**

The defendants have no material objection to the general instructions on conspiracy that the government provides in its Request No. 5, Conspiracy Generally (see ECF #127, pp. 11-14 of 86). However, its instruction on "willfully and knowingly" in connection with the second element is incomplete. Instead of that portion of the last paragraph on p.11 starting with "The second element" through the end of the first full paragraph on p. 12 ("from the facts proved"), we request the following instruction:

The second element is that the defendant willfully and knowingly became a member of the conspiracy. The government must prove that beyond a reasonable doubt.

A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

"Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.

Sand, <u>Modern Federal Jury Instructions</u>, Instrs. 3A-1, 3A-3 [a more extended definition of "willfully," as it pertains to the collection of unlawful debt, is given in defendants' proposed RICO charges].

**REQUEST NO. 30**

**COUNT ONE: RICO Conspiracy**

In order to convict a defendant of RICO conspiracy, the government must prove, beyond a reasonable doubt, each of the following elements:

1) First, that there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through the collection of unlawful debt;

2) Second, that the defendant you are considering knowingly and willfully became a member of that agreement; and

3) Third, that the defendant you are considering or another member of the conspiracy agreed to collect unlawful debt.

Adapted from Sand, Modern Federal Jury Instructions, Instr. 52-28.

As to the first element, we ask the Court to charge the language in Sand, Modern Federal Jury Instructions, Instr. 52-29, with appropriate definitions of "enterprise" and "interstate commerce" adapted from Instrs. 52-20 and 52-21.

As to the second element, we request the following instructions:

The second element that the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member of the conspiracy charged in the indictment.

Thus you first determine whether the defendant joined the conspiracy with an awareness of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

I want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of the purpose or objective of the conspiracy – namely, the collection of unlawful debt – and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement to collect unlawful debt – that is to say, a conspirator.

As with the substantive RICO counts, a good faith misunderstanding of the requirement of the law is a defense to the RICO conspiracy charge. In this connection, it is for you to decide whether the defendant engaged in the joint undertaking in good faith, that is, whether he sincerely misunderstood the requirements of the law, or whether he knew what he was required to do and deliberately did not do so. As I have previously instructed you, a defendant has no burden of establishing a defense of good faith. The burden is on the government to prove, beyond a reasonable doubt, that he acted willfully and, consequently, a lack of good faith.

Adapted from Sand, <u>Modern Federal Jury Instructions,</u> Instr. 52-30; <u>see</u> Instr. 3A-3; <u>see also</u> <u>United States v. Torres,</u> 604 F.3d 58, 65 (2d Cir. 2010) (to secure a conspiracy conviction, government must prove the same <u>mens rea</u> as necessary for rthe substantive offense"), citing <u>United States v. Feola,</u> 420 U.S. 671, 686 (1975); <u>United States v. Ferrarini,</u> 219 F.3d 145, 155-56 (2d Cir. 2000) (re "knowingly, willfully and unlawfully" as charged in conspiracy context).

As to the third element, we ask the Court to charge, "the third element the government must prove beyond a reasonable doubt is that the defendant agreed to participate in the collection of unlawful debt, as I have previously defined that term.

**REQUEST NO. 31**

**COUNTS TWO THROUGH FOUR: RICO- Collection of Unlawful Debt**

In order to prove that the defendant violated section 1962(c), the government must establish beyond a reasonable doubt each of the following five elements of the offense:

1) First, that an enterprise existed as alleged in the indictment;

2) Second, that the enterprise affected interstate or foreign commerce;

3) Third, that the defendant was associated with or employed by the enterprise;

4) Fourth, that the defendant engaged in the collection of an unlawful debt; and

5) Fifth, that the defendant conducted or participated in the conduct of the enterprise through that collection of an unlawful debt.

Sand, Modern Federal Jury Instructions, Instr. 52-19.

The defendants have no material objections to the government's charge requests as to the first three elements, currently set forth in its RICO conspiracy section (see govt's requests to charge, ECF #127, pp. 17-19 of 86). They are in keeping with Sand, Modern Federal Jury Instructions, Instrs. 52-20, 52-21 and 52-22. However, we ask the Court not to reference the government's appellation of the charged enterprise ("Tucker Payday Lending Organization"). It will be abundantly clear through the evidence what businesses are targeted by the government, and the Court should not endorse the government's label which suggests a formal criminal organization.

The defendants do object to the government's request to charge as to the fourth element (see ECF #127, p. 23 of 86), principally because it does not include any mens rea element. We request the following instruction instead:

The fourth element that the government must prove beyond a reasonable doubt is that the defendant engaged in the collection of an unlawful debt. As I have previously

instructed, "unlawful debt" means a debt which was unenforceable in whole or in part under federal or state law because of the laws relating to usury, and which was incurred in connection with the business of lending money or any thing of value at a rate that was usurious under federal or state law, where the rate was at least twice the legally enforceable rate.

Usury laws differ from one state to another, as do enforceable rates of interest. You have been provided evidence about the maximum interest rates permitted in certain states. As an example, the enforceable interest rate on loans in New York is nor more than 25 percent per year.

In order to prove that the defendant you are considering engaged in the collection of an unlawful debt, the government must establish, beyond a reasonable doubt, that the defendant knowingly, willfully and unlawfully engaged in the collection of an unlawful debt.

"Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law. The defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake.

Further, the defendant's conduct was not "willful" if it was the result of a good faith misunderstanding of the requirement of the law. In this connection, it is for you to decide whether the defendant acted in good faith, that is, whether he sincerely misunderstood the requirements of the law, or whether he knew what he was required to do and deliberately did not do so. An honest belief that his conduct was lawful is a complete defense, however inaccurate that belief was. A defendant has no burden of establishing a defense of good faith. The burden is on the government to prove, beyond a reasonable doubt, that he acted wilfully and, consequently, a lack of good faith.

Sand, <u>Modern Federal Jury Instructions</u>, Instrs. 3A-3, 8-1; <u>see</u> <u>United States v. Biasucci</u>, 756 F.2d 504, 513 (2d Cir. 1986) (re knowingly, wilfully and unlawfully); <u>Cheek v. United States</u>, 498 U.S. 192, 201-04 (1991) (good faith is a defense to willful criminal conduct, and defendant's belief need not be objectively reasonable); <u>United States v. Doyle</u>, 130 F.3d 523, 540 (2d Cir. 1997) (good faith is a defense to willful criminal conduct).

The defendants do not object to the Court charging, in addition to the above, the instruction the government has included as to the fourth element (that the government need not prove the existence of more than one unlawful debt per each of Counts Two through Four, but that the jury must be unanimous as to any debt it finds a defendant committed). <u>See</u> ECF #127, p. 23 of 86; Sand, <u>Modern Federal Jury Instructions</u>, Instr. 52-24.

We have not adopted the government's proposal to have the Court instruct that the interest rate limits in certain named states are 36 percent or less (<u>see</u> ECF #127, p. 20 of 86). Whether the Court should charge on state law is a subject of a government motion in limine (ECF #129, pp. 35-36 of 69), which we separately address. Moreover, the states the government lists in its charge request do not match the state statutes cited in n.2, and some of the states at issue in the substantive RICO counts are not listed at all.

As to the fifth element, the defendants request the following instruction:

The fifth and final element that the government must prove beyond a reasonable doubt is that the defendant conducted or participated in the conduct of the enterprise through the collection of unlawful debt.

To conduct or participate in the conduct of the enterprise means that the defendant must have played some part in the operation or management of the enterprise. The government is not required to prove that the defendant was a member of upper management. An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under the direction of upper management.

In addition to proving that the defendant played some part in the operation or management of the enterprise, the government must also prove that there is some meaningful connection between the defendant's illegal conduct and the affairs of the enterprise. To satisfy this part of the element, the government must establish either (1) that the defendant's position in the enterprise facilitated his commission of the collection of unlawful debt and that that conduct had some impact or effect on the enterprise, or (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the defendant was able to commit the acts by virtue of his position or involvement in the affairs of the enterprise.

Sand, <u>Modern Federal Jury Instructions,</u> Instr. 52-25.

<u>**REQUEST NO. 32**</u>

**RELEVANT LAW PERTAINING TO TRIBAL SOVEREIGNTY**


You have heard testimony and evidence regarding the legal doctrine of "tribal

sovereignty." Tribal sovereignty means that federally recognized Indian tribes, like

States, possess the power of self-government. Indian tribes possess aspects of

sovereignty that have not been expressly abrogated by treaty with the United States

government or by a federal statute. Tribal sovereignty is subject to the exclusive control

of the United States Congress and is recognized and supported by the United States

government.

Among the sovereign rights retained by federally recognized Indian tribes are the

right to make their own laws, the right to enter into contracts and agreements to trade

freely, the right to seek and obtain investment from outside sources that do not originate

with the tribes, the right to enter into economic ventures with outside entities that are not

tribal entities. Indian tribes also enjoy immunity from lawsuits, including a lawsuit

brought by a State in its own courts attempting to enforce its laws. This doctrine should

be considered when evaluating whether a defendant acted in good faith or acted

willfully.

25 U.S.C. § 1301; <u>United States v. Wheeler</u>, 435 U.S. 313, 323 (1978); <u>Michigan v. Bay Mills Indian Community</u>, 134 S. Ct. 2024, 2030, 2040 (2014); Executive Order 13175; <u>Williams v. Lee</u>, 358 U.S. 217, 220 (1959); 25 U.S.C. 4301(a)(4); 25 U.S.C. 4301(a)(9); <u>Bay Mills</u>, 134 S. Ct. at 2030.

## REQUEST NO. 33

**RELEVANT LAW PERTAINING TO TRIBAL SOVEREIGN IMMUNITY**

You have heard testimony and evidence regarding the legal doctrine of "tribal sovereign immunity." Tribal sovereign immunity protects federally recognized Indian tribes from being sued, whether by a private individual or by a State suing in its own courts. Tribal sovereign immunity limits the means by which a State can enforce its laws against an Indian tribe, regardless of whether the tribal conduct at issue is commercial or governmental in nature, and regardless of whether the tribal conduct occurs inside or outside of Indian lands. Tribal sovereign immunity is an inherent aspect of an Indian tribe's sovereignty. Tribal sovereign immunity is a matter of federal law and is not subject to diminution by any State. Tribal sovereign immunity also extends to an "arm" of the tribe. This doctrine should be considered when evaluating whether a defendant acted in good faith or acted willfully.

Michigan v. Bay Mills Indian Community, 134 S. Ct. 2024, 2030(2014); Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc., 523 U.S. 751, 756 (1998); Bay Mills, 134 S. Ct. at 2030; see, e.g., Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1191–1195 (10th Cir. 2005)

**LAW ENFORCEMENT WITNESSES**

You have heard the testimony of a law enforcement official. The fact that a witness may be employed by the government as a law enforcement official does not mean that *his* or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. As with other witnesses, you may consider whether that person's testimony is colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all of the evidence, to give the testimony of a law enforcement witness whatever weight, if any, you find it deserves.

Adapted from the charge of the Honorable Richard J. Sullivan in *United States v. Peirce*, 06 Cr. 1032 (RJS) (S.D.N.Y. 2008).

<u>**REQUEST NO. 35**</u>

**GOOD FAITH RELIANCE UPON ADVICE OF COUNSEL (as to Scott Tucker)**

Good-faith is a complete defense to the charges in the indictment because the Government must prove beyond a reasonable doubt that the defendant acted willfully, with the intent to defraud or with a bad purpose to disobey or disregard the law. Evidence that the defendant in good-faith followed the advice of counsel would be inconsistent with such an unlawful purpose.

You have heard evidence that the defendant received advice from lawyers and you may consider that evidence in deciding whether the defendant acted willfully and with knowledge. You must ask yourselves whether the defendant honestly and in good faith sought the advice of a competent lawyer as to what he may lawfully do; whether he fully and honestly laid all the facts before his lawyer; and whether in good faith he honestly followed such advice, relying on it and believing it to be correct.

In short you should consider whether, in seeking and obtaining advice from lawyers, the defendant intended that his acts shall be lawful. If he did so, it is the law that a defendant cannot be convicted of a crime that involves willful and unlawful intent, even if such advice were an inaccurate construction of the law. On the other hand, no man can willfully and knowingly violate the law and excuse himself from the consequences of his conduct by pleading that he followed the advice of his lawyer. Whether the defendant acted in good faith for the purpose of seeking guidance as to the specific acts in this case, and whether he laid all the facts before his lawyer, and whether he acted substantially in accordance with the advice received, are questions for you to determine.

Adapted from Sand, Modern Federal Jury Instructions, Instr. 8-4 and Eleventh Circuit Pattern Criminal Jury Instructions, Special Instruction 18.

## REQUEST NO. 36

## SUPPLEMENTAL REQUESTS

## THEORY OF DEFENSE CHARGES

The Second Circuit has consistently held that a defendant has a right to a jury charge which reflects his theory of defense. *United States v. Dove,* 916 F.2d 41, 47 (2d Cir. 1990)(a defendant "is entitled to instructions relating to his theory of defense for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court); *United States v. Regan,* 937 F.2d 823, 827 (2d Cir. 1991)("[a]ppellants were entitled to have the trial court clearly instruct the jury, relative to appellants' theory of defense to the tax charges, that the theory if believed justified acquittal on those charges"); *United States v. Durham,* 825 F.2d 716, 718 (2d Cir. 1987); *United States v. Rodriquez,* 2007 WL 926662 (2d Cir. 2007)(citing *United States v. Prawl,* 168 F.3d 622, 626 (2d Cir. 1999), conviction will be vacated for failure to give a theory of defense instruction where "(1) the requested instruction represents a theory of defense with basis in the record that would lead to acquittal, (2) the theory is not effectively presented elsewhere in the charge, and (3) the requested instruction is legally correct in every respect").

The defendant requests leave to submit a theory of the defense charge after he has heard the government's evidence.

**OBJECTIONS TO THE GOVERNMENT'S REQUESTS TO CHARGE**

**OBJECTION TO GOVERNMENT REQUEST 8**

**RICO Counts, Knowledge of State Laws Not Required**

As we have made clear elsewhere, defendants would not require the government to prove they knew the specific rates of interest permitted in various states. Accordingly, we do not object to the government's charge request generally (ECF #127, p. 25 of 86). However, the instruction should address only usury rates, not usury laws in general. The unlawful debt collection provision of RICO addresses rates of interest, not usury laws. The last sentence of request no. 8 should therefore read, in accordance with United States v. Biasucci, 786 F.2d 504, 512 (2d Cir. 1986), "Nor does the government have to prove that a defendant knew the enforceable rate of interest in any other state." The first sentence of the request should also insert "specific" before "rates" – that is, "the government is not required to prove that a defendant knew what the specific usury rates were in states where the borrowers lived."

**OBJECTION TO GOVERNMENT REQUEST 9**

**RICO Counts, Law Pertaining to Tribal Sovereign Immunity**

The government asks the Court to charge the jury, as a matter of law, that federally-recognized Indian tribes are not exempt from state usury laws (ECF #127, p. 26 of 86). None of the cases it cites stand for that proposition. In fact, no case, and certainly no case on the books when the instant indictment was filed, so held, nor did any statute. Further, as the government is aware, numerous Indian tribes have engaged in payday lending over the years, without regard to state usury laws (including numerous tribes who have never had an affiliation with Mr. Tucker and who have never sought the legal services of Mr. Muir), and none have been prosecuted in state or federal court.

The government acknowledges in its charge request that there will be evidence and testimony at trial about the concept of "tribal sovereign immunity," which it then refers to as a "legal rule." Defendants note that "tribal sovereign immunity" is a legal doctrine, not a legal rule. In any event, the government is correct that there will be evidence and testimony regarding the doctrine of tribal sovereign immunity, together with the correlated doctrine of tribal sovereignty[2], as these doctrines are at the heart of the defendants' defense. The proposed charge would not only materially undermine the defense, but it would confuse the jury as it mischaracterizes the law: whether it is federal, tribal, or even state, "sovereign immunity" does not "provide" anything, but, rather it "prevents" otherwise applicable laws from being enforceable against the sovereign. In sum, there is no legal basis for the request as written, especially when the seminal Supreme Court case, Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc., 523 U.S. 751 (1998) (cited by the

---

[3] There will be evidence and testimony that at least two state agencies, one from a so-called "Prohibited Pay Day Loan State" and one from a "Regulated Pay Day Loan State" (see Indictment, pars. 8 and 9), have acknowledged that tribal sovereignty allows tribes to make online loans to residents of their states pursuant to tribal laws, not their respective state laws.

government in its Request No. 9), held that the doctrine of tribal sovereign immunity prevents states from enforcing their laws against tribal entities for both governmental and commercial conduct, whether the conduct occurs inside or outside of a tribe's jurisdiction.

We acknowledge that, in general, ignorance of the law is no defense to a criminal charge. In this instance, however, there is no "law" for the defendants to be ignorant of. Moreover, whatever pronouncements a court may make post-indictment – we refer to the District Court's decision in United States v. Hallinan, which the government cited it its reply to Mr. Muir's motion to dismiss – is irrelevant to the disputed issues at trial.

While the defendants do not object to the first sentence of the government's request no. 9, we do object to the inclusion of the words "some of" in the second sentence because as Kiowa made clear, absent a waiver, tribal sovereign immunity prevents a state from enforcing its laws against tribal entities, whether for governmental and commercial conduct and whether on or off the reservation, and no state has ever successfully enforced its usury laws against a tribal entity because of tribal sovereign immunity. Further, for the reasons stated above, defendants strongly object to the final sentence and ask that at a minimum it be deleted. In fact, defendants request that the government's request no. 9 be rejected and, instead, that the Court adopt defendants' request regarding "Relevant Law Pertaining to Tribal Sovereign Immunity."

<u>**OBJECTION TO REQUEST NO. 41**</u>

**Limiting Instruction: Similar Act Evidence**

If the Court determines that certain prior bad acts of Mr. Tucker are admissible (the subject of a government motion in limine which we oppose), it will also determine the theory of admissibility, <u>e.g.</u>, relevance to the issue of his knowledge and intent. The government's charge request is accordingly premature.

However, it is objectionable on two general grounds. The charge is titled "similar" act evidence, and the body contains assertions that Mr. Tucker's prior acts <u>are</u> similar. For example, the third sentence of the proposed charge reads, "Accordingly, you may not consider this evidence <u>of similar acts</u> as a substitute . . . "; the last sentence of that paragraph reads, "The evidence of other, <u>similar</u> acts . . . "; and the first sentence of the next paragraph states, "If you determine that the defendant committed . . . <u>the similar acts</u> . . .". Whether or not an act is "similar" to the crimes charged is for the jury to determine. The language used by the government essentially seeks the Court to endorse its position.

Second, the government would authorize the jury to consider all the prior bad acts identified in its motion in limine as "part of a common plan or scheme employed by the defendant" (third paragraph of request to charge). Under no circumstances could evidence of Mr. Tucker's exceedingly remote prior convictions be deemed relevant on this theory. Indeed, in its motion, the government does not advance a "common plan or scheme" theory for the admission of any of the bad act evidence it seeks to introduce.

## OBJECTION TO REQUEST 42

**Uncalled Witnesses: Equally Available**

We ask the Court not to give this charge at all, in the exercise of its discretion.  <u>See</u> <u>United States v. Caccia</u>, 122 F.3d 136, 139 (2d Cir. 1997), reaffirmed in <u>United States v. Pierce</u>, 785 F.3d 832, 844 (2d Cir. 2015).

First, the defendants do not, in fact, have an equal opportunity to call witnesses. The government has power to enter into cooperation agreements and call witnesses who will testify in hopes of leniency in their own cases, and also to offer immunity to witnesses, <u>e.g.</u>, by entering into non-prosecution agreements as was done in this case.  The defense does not have these powers.  Further, other people involved in the lending operations, if called by the defense, could assert the Fifth Amendment or refuse to testify honestly because of a fear of prosecution.

Second, the "equal availability" charge just highlights that defendants have the opportunity to subpoena witnesses themselves in support of their defense. That undermines the burden of proof instruction.

Third, we believe the "equally available" instruction was designed to address a situation not shown to be present here, namely, when a party wants jurors to draw a negative inference from a particular witness's failure to appear.  In such circumstances, if the missing witness is not shown to be unavailable or under the other party's control, the jury could be instructed that each side had subpoena power.

The defendants do not object to the jury being charged that the government is not required to call every possible witness – this could be inserted, for example, in the government's proposed charge titled, "Particular Investigative Techniques Not Required"

(Request No. 32). But an "Uncalled Witnesses: Equally Available" charge should not be given.  If the Court disagrees, it should include in it a reiteration of the principle that the defendant has no burden to call witnesses or produce any evidence.  See United States v. Bahna, 68 F.3d 19, 22 (2d Cir. 1995); United States v. Taher, 2015 U.S. Dist. Lexis 44440, *16 (W.D.N.Y. 2014).

## CONCLUSION

Defendants Tucker and Muir respectfully request that the foregoing instructions be given. They also request leave to amend the proposed charges or submit additional charges as they become necessary.

Dated: New York, New York
February 17, 2017

/s/ Lee A. Ginsberg

Lee A. Ginsberg
On behalf of Defendants