UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                           -against-

SCOTT TUCKER and TIMOTHY MUIR,

                           Defendants.
-----------------------------------------------------------x

16-cr-91 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

        Defendant Timothy Muir has filed a motion to dismiss Counts One through Four of the Indictment pursuant to Rule 12(b), Fed. R. Crim. P. (Docket # 39, 44.) Defendant Scott Tucker joins the motion. (Docket # 97.)

        The Superseding Indictment (the "Indictment") charges Tucker and Muir with running an unlawful enterprise that charged usurious debt in violation of the laws of various states, including New York. (Docket # 114.) Counts One through Four are brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. Count One charges both defendants with a conspiracy to collect unlawful debt in violation of 18 U.S.C. § 1962(d). Counts Two, Three and Four each charges a separate count of the collection of unlawful debt in violation of 18 U.S.C. § 1962(c).

        Defendants argue that the Indictment fails to state an offense for the collection of an "unlawful debt" as the term is defined by 18 U.S.C. § 1961(6). They argue that, as a matter of law, the debts described in the Indictment cannot be unlawful because their rates were set by federally recognized Indian tribes, which have sovereign powers that can be abrogated only

through direct Congressional action. They argue that because the Indictment asserts violation of state usury laws, the charges are an unlawful intrusion into tribal sovereignty.

For the reasons explained, defendants' motion to dismiss Counts One through Four is denied. Defendants' additional, related motions also are denied.

OVERVIEW OF COUNTS ONE THROUGH FOUR.

"In reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true." United States v. Skelos, 2015 WL 6159326, at *2 (S.D.N.Y. Oct. 20, 2015) (Wood, J.).

The Indictment alleges that Tucker owned and operated a group of so-called "payday lending" businesses, which issued high-interest, unsecured loans to customers located throughout the country. (Indictment ¶ 1.) Tucker controlled the businesses and personally funded the loans. (Indictment ¶ 1.) The lenders held themselves out to be separate businesses under names including Ameriloan, One Click Cash, United Cash Loans, US FastCash, 500 FastCash, Advantage Cash Services and Star Cash Processing. (Indictment ¶ 2.) However, the businesses shared common employees, computer systems and office infrastructure as part of a single company named AMG Services, Inc. ("AMG"), based in Overland Park, Kansas. (Indictment ¶ 2.) Muir has been AMG's general counsel since 2006. (Indictment ¶ 3.)

According to the Indictment, from 1997 through 2013, Tucker (and, later, Muir) led an enterprise that extended loans to consumers at interest rates as high as 700% or more, in violation of state civil and criminal usury laws that cap annual rates. (Indictment ¶¶ 4, 8-10.) The Indictment also asserts that the terms of repayment were not described with the clarity and honesty required by the Truth in Lending Act, 15 U.S.C. § 1601, et seq., and that defendants imposed rates that far exceeded the disclosed rates. (Indictment ¶¶ 11-19.)

In 2003, after state governments brought a series of legal actions against Tucker's businesses, Tucker entered into what the Indictment alleges were "sham business relationships" with three unnamed Indian tribes, in a knowing attempt to use tribal sovereign immunity as a shield against the usury laws. (Indictment ¶¶ 6, 22-24.) Later, Muir allegedly "served as an architect" of these arrangements. (Indictment ¶ 28.) Beginning in 2003, Tucker and/or Muir submitted materially false and misleading affidavits to various courts about the tribes' purported ownership and control of the lending businesses. (Indictment ¶¶ 6, 23.) To maintain the façade of tribal ownership, Tucker arranged for tribe members to "press a key on a computer on a daily basis on tribal lands to purportedly 'approve' the extension of credit on hundreds or thousands of loans" that had already been approved by staff in AMG's offices in Kansas. (Indictment ¶ 25.) In phone calls with customers, AMG employees falsely claimed to be located in Oklahoma or Nebraska, where the three tribes are based, even though the employees actually were located in Kansas. (Indictment ¶ 26.) According to the Indictment, the three tribes "played no substantive role" in the businesses' ownership or operation, had no decision-making power over the businesses and no entitlement to their profits. (Indictment ¶ 24.)

Despite the "sham appearance" of tribal ownership, Tucker allegedly remained the source of capital for the businesses, bore their financial risks and received and controlled their profits. (Indictment ¶ 29.) Tucker also made all material business decisions, including on issues related to the servicing and collecting of loans and relationships with banks and payment processors. (Indictment ¶ 29.)

According to the Indictment, Tucker and Muir, along with other unnamed individuals, were members of a criminal enterprise, as defined by 18 U.S.C. § 1961(4), which engaged in the collection of unlawful debt. (Indictment ¶ 30-31.) Tucker owned, led and

controlled the enterprise, with Muir also acting as a leader. (Indictment ¶ 32.) According to Count One, members of the enterprise conspired to violate 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of . . . collection of unlawful debt." (Indictment ¶¶ 35-36.)

Counts Two, Three and Four separately allege that Tucker and Muir engaged in the collection of unlawful debt through five entities that were operated out of the Overland Park offices of AMG: Ameriloan, United Cash Loans, U.S. FastCash, 500 FastCash and One Click Cash. (Compl't ¶¶ 37-45.) Each count alleges incidents in which Tucker and Muir collected or attempted to collect on usurious loans with terms that were barred by the laws of various states, thereby violating 18 U.S.C. § 1962(c).

MOTION TO DISMISS STANDARD.

An indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Rule 7(c)(1), Fed. R. Crim. P. "An indictment must sufficiently inform the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events." United States v. De La Pava, 268 F.3d 157, 162 (2d Cir. 2001). "An indictment, however, need not be perfect, and common sense and reason are more important than technicalities." Id.

Dismissal is appropriate "only in very limited and extreme circumstances . . . ." United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979). Dismissal "is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." De

La Pava, 268 F.3d at 165; see also United States v. Fields, 592 F.2d 638, 647 (2d Cir. 1978) (dismissal of an indictment is "the most drastic remedy available" and an "extreme sanction"). A pretrial motion to dismiss an indictment must not weigh the sufficiency of the evidence. United States v. Alfonso, 143 F.3d 772, 777 (2d Cir. 1998).

THE MOTION TO DISMISS COUNTS ONE THROUGH FOUR IS DENIED.

Under 18 U.S.C. § 1961(6), "'unlawful debt' means a debt . . . (B) which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." As noted, 18 U.S.C. § 1962(c) makes it unlawful for an enterprise to participate in a pattern of the collection of unlawful debt.

Tucker and Muir contend that, as a matter of law, the interest rates charged by AMG cannot be "unlawful debt" because those rates were set by Indian tribes. Article I, section 8 of the Constitution provides that Congress shall "regulate Commerce . . . with the Indian Tribes," thus giving Congress "plenary and exclusive" authority over them. United States v. Lara, 541 U.S. 193, 194 (2004) (collecting cases). Defendants argue that Indian tribes have the inherent, sovereign authority to "export" interest rates, unless expressly abrogated by Congress. See generally United States v. Wheeler, 435 U.S. 313, 322 (1978) ("The powers of Indian tribes are, in general, inherent powers of a limited sovereignty which has never been extinguished.") (emphasis in original; quotation marks omitted); Montana v. United States, 450 U.S. 544, 565 (1981) ("A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribes or its members, through commercial dealing, contracts, leases, or other arrangements."). Because only Congress can abrogate tribal sovereignty, defendants argue that state usury laws cannot apply to the terms of

loans offered by tribal entities.  According to defendants, this means that, as a matter of law, the indictment fails to identify an "unlawful debt."

Accepting the Indictment's allegations as true, however, the debts at issue were not issued by tribal entities, but by AMG and its affiliated businesses, which were controlled entirely by Tucker.  The Indictment alleges that the tribal relationships were a sham entered into with the intent to shield defendants and their enterprise from liability related to their long-running, unlawful activities.  It alleges that Tucker did not sell or assign any of the lending companies to the tribes, but instead entered into "sham business relationships" with them, which included the submission of materially false and misleading affidavits about the tribes' roles in the companies.  (Indictment ¶ 23.)  The government contends that tribes had no actual role in the businesses, and performed only perfunctory and superficial tasks.

Accepting the truth of the allegations, the Indictment alleges that the enterprise controlled and led by Tucker and Muir was not a tribal entity.  Instead, the enterprise entered into superficial, "sham" relationships with three sovereign tribes for the purpose of invoking immunity.  Whether this was, in fact, the case is a matter to be decided at trial based on the evidence.

Moreover, the Second Circuit has concluded that a tribe-run lender doing business over the internet is not necessarily exempt from state usury laws.  Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs., 769 F.3d 105 (2d Cir. 2014).  A tribe's actions "'going beyond the reservation boundaries'" must comply with non-discriminatory state laws if those laws are unlikely to affect tribal self-government.  Id. at 113 (quoting Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-49 (1973)).  "A tribe's interest peaks when a regulation threatens a venture in which the tribe has invested significant resources."  Id.  "In contrast, a tribe

has no legitimate interest in selling an opportunity to evade state law." Id. at 114. A court must weigh the record to "assess whether a regulation threatens a significant investment . . . or whether a tribe has merely masked a legal loophole in the cloak of tribal sovereignty . . . ." Id. Relevant considerations include whether loan approvals, processing and underwriting took place on a reservation, and whether funds were loaned from tribal banks, as opposed to bank accounts the tribe maintained at outside, non-tribal banks. Id. at 115. Even if those considerations weigh in favor of a tribe, courts may still consider a state's interest in regulating the lending practices offered to its citizens. Id.

The tribes' interests and the resources that they invested in the lending businesses must be considered based on the evidence at trial, and cannot be decided based on defendants' arguments in a motion to dismiss. Defendants' motion to dismiss Counts One through Four for failing to identify an unlawful debt is therefore denied.

THE MOTION TO DISMISS COUNT ONE AS DUPLICITOUS IS DENIED.

Tucker and Muir also move to dismiss Count One on the grounds that it alleges two separate and distinct conspiracies, and is therefore duplicitous. (Docket # 40, 97.) "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001).

Defendants argue that Count One identifies two distinct conspiracies: one that involved a Delaware-chartered bank from 1997-2003, and a second that began in 2003 and involved the three Indian tribes.

"Changes in membership, differences in time periods, and/or shifting emphases in the location of operations do not necessarily require a finding of more than one conspiracy." United States v. Jones, 482 F.3d 60, 72 (2d Cir. 2006). This is the case "especially where the activity of a single person was central to the involvement of all." United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) (quotation marks omitted). "Whether more than one conspiracy exists is a question of fact to be answered by a jury at trial. Accordingly, a district court should ordinarily not grant a motion to dismiss for duplicity where the indictment sufficiently alleges a single conspiracy." United States v. Molina, 2013 WL 2455922, at *1 (S.D.N.Y. June 5, 2013) (Keenan, J.) (internal citations omitted).

According to the Indictment, beginning in or about 1997, Tucker partnered with an unnamed co-conspirator to offer payday loans through a bank chartered in Delaware. (Indictment ¶ 21.) The Indictment asserts that Tucker and his co-conspirators funded and controlled the loan-approval process, and deceptively portrayed the Delaware bank as the lender in order to benefit from favorable laws concerning the "export" of interest rates to other states. (Indictment ¶ 21.) Tucker then allegedly formed relationships with the Indian tribes after state authorities took legal actions concerning his lending practices. (Indictment ¶ 21, 23.)

The Court concludes that the Indictment facially alleges a single conspiracy to collect unlawful debt, which was led and controlled by Tucker. The change in location and the composition of membership does not warrant the dismissal of Count One as duplicitous, and the issue of whether more than one conspiracy existed is a question of fact for trial. See Molina, 2013 WL 2455922, at *1.

Defendants' motion to dismiss Count One as duplicitous is therefore denied.

TUCKER'S MOTION TO DISMISS COUNT ONE ON GROUNDS OF DELAY IS DENIED.

Tucker argues that his Fifth Amendment right to due process has been violated because the government waited until 2016 to indict him, even though state-initiated civil actions were publicly brought in 2003 and a criminal tax investigation of Tucker commenced in 2013. He argues that he has been prejudiced by this delay because his relationship with the Delaware bank ended in 2003, a time period during which he failed to retain relevant records of his business dealings.

An indictment brought within the limitations period "has a strong presumption of validity," and "timely brought criminal prosecutions are only rarely dismissed." United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999). When arguing that a delay was unconstitutional, "[a] defendant bears the 'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was a course intentionally pursued by the government for an improper purpose." Id.

But according to the Indictment, Tucker participated in a single conspiracy that lasted from 1997 through at least 2013. (Indictment ¶ 4.) The Indictment was returned in February 2016, which is within RICO's five-year limitations period. 18 U.S.C. § 3282(a). Tucker has not explained what any purportedly lost documents might show or why he did not maintain his records. Moreover, there is nothing in the record that would support a conclusion that the government intentionally sought to delay bringing the Indictment for an improper purpose.

Because Tucker has not shown prejudice or improper purpose, his motion to dismiss Count One for pre-indictment delay is denied.

MUIR'S SEVERANCE MOTION IS DENIED.

Muir moves to sever his trial from Tucker's. (Docket # 40, 44.) Muir argues that he would be unfairly prejudiced by a single trial, since he is not alleged to have participated in activities related to the Delaware bank and was not involved "in the development of the tribes' lending businesses." (Docket # 40 at 6.)

Rule 14(a), Fed. R. Crim. P., gives a court discretion to grant a motion for severance if the joinder of defendants "appears to prejudice a defendant or the government . . . ." "The Supreme Court has instructed that a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). "For reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." Id. "Where, as here, the crime charged involves a common scheme or plan, a joint trial of the participants is proper, absent a clear showing of prejudice." United States v. Girard, 601 F.2d 69, 72 (2d Cir. 1979).

Muir's motion for severance is denied. He has not made any showing of prejudice. Judicial economy weighs heavily in favor of a joint trial, because the case against the two defendants turns on common witnesses and other evidence. Although Muir is alleged to have entered the conspiracy several years after it commenced, his alleged role is still part of a common scheme or plan that he allegedly participated in with Tucker. Because Muir has not meaningfully articulated how he would be prejudiced by a joint trial, the Court declines to exercise its discretion to sever the government's charges against Muir.

TUCKER'S REMAINING MOTIONS ARE DENIED.

Tucker also moves for a bill of particulars and to strike surplusage from the Indictment. On the record in open court, the Court previously denied motions brought by Muir on similar grounds. (See 6/13/16 Transcript, Docket # 64.)

Rule 7(f), Fed. R. Crim. P., "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). Whether to grant a bill of particulars is in the trial court's "sound discretion." Id. A bill of particulars should not be a vehicle for defendants "to preview the evidence or theory of the government's case" or to access information that is merely "helpful." United States v. English, 2011 WL 3366490, at *4 (S.D.N.Y. July 29, 2011) (McMahon, J.).

Tucker argues that the Indictment does not fully identify all lenders controlled by Tucker, but it identifies by name specific lending businesses alleged to be controlled by Tucker through ARG. The government also has stated on the record that it has provided defendants with copies of the affidavits that it contends were falsely drafted in an attempt to claim tribal immunity, but that it had declined to identify in a bill of particulars which specific statements it believed to be false. (6/3/16 Tr. at 5-6.)

As with Muir's motion, this Court concludes that the Indictment provides Tucker with notice of the charges against him sufficient to prepare for trial and prevent surprise, and that the government has adequately disclosed the existence of the alleged "sham" affidavits by providing them to defendants. Tucker's motion for a bill of particulars is therefore denied.

To the extent that Tucker moves to strike surplusage from the Indictment pursuant to Rule 7(d), Fed. R. Crim. P., allegations will be struck only if they are inflammatory and prejudicial, and irrelevant to the crimes charged. See United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990). The movant is held to an "exacting standard." Id. "Courts in this district routinely await presentation of the Government's evidence at trial before ruling on a motion to strike." United States v. Mostafa, 965 F. Supp. 2d 451, 467 (S.D.N.Y. 2013) (Forrest, J.). Tucker's motion is mainly directed to certain characterizations of the consequences of high-interest loans and the goals of state usury laws. His motion to strike surplusage is denied without prejudice to renewal at trial.

Tucker's remaining discovery-related motions, which seek advance disclosure of co-conspirator statements, the identity of government witnesses and "rough notes taken by agents and officers during the investigation of this case," are denied without prejudice to renewal.

CONCLUSION.

For the reasons explained, the defendants' motion to dismiss Counts One through Four for failure to allege an unlawful debt is DENIED. The defendants' related motions also are DENIED. The Clerk is directed to terminate those motions. (Docket # 39, 40, 44, 97.)

SO ORDERED.

_P. Kevin Castel_
United States District Judge

Dated: New York, New York
March 1, 2017