H391tucc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA,
3
                v.                          16 Cr. 91 (PKC)
4
    SCOTT TUCKER and TIMOTHY MUIR,
5
                      Defendants.           Conference
6   ------------------------------x

7                                           New York, N.Y.
                                            March 9, 2017
8                                           11:58 a.m.

9

    Before:
10
                      HON. P. KEVIN CASTEL,
11
                                            District Judge
12

13                          APPEARANCES

14  PREET BHARARA
         United States Attorney for the
15       Southern District of New York
    BY:  NIKETH V. VELAMOOR, ESQ.
16       Assistant United States Attorney

17  FREEMAN NOOTER & GINSBERG
         Attorneys for Defendant Scott Tucker
18  BY:  LEE A. GINSBERG, ESQ.

19  STAMPUR & ROTH
         Attorneys for Defendant Scott Tucker
20  BY:  NADJIA LIMANI, ESQ.

21  BATH & EDMONDS, P.A.
         Attorneys for Defendant Timothy Muir
22  BY:  THOMAS J. BATH, JR., ESQ.

23  BRAFMAN & ASSOCIATES, P.C.
         Attorneys for Defendant Timothy Muir
24  BY:  MARC A. AGNIFILO, ESQ.

25  ALSO PRESENT:  RANDALL PRAISWATER, IRS Special Agent
                   JERRY WHITTEN, IRS Special Agent

H391tucc

```
 1              (Case called)

 2              THE DEPUTY CLERK:  For the government?

 3              MR. VELAMOOR:  Good morning, your Honor.  Nik Velamoor

 4    for the government.  I'm joined at counsel table by Special

 5    Agents Jerry Whitten and Randall Praiswater from the IRS

 6    criminal investigation division.

 7              THE COURT:  All right.  Thank you, Mr. Velamoor, and

 8    good afternoon.

 9              And for the defendants?

10              MR. GINSBERG:  Your Honor, good morning.  For

11    Mr. Tucker, Lee Ginsberg and Nadjia Limani.  We also have in

12    the audience Beverly Van Ness, who's been working on the legal

13    motions, and Eli Salamon-Abrams, who's our paralegal who's been

14    working on productivity and trying to obtain documents.

15    Mr. Roth had a previous engagement, family engagement out of

16    town, so he's not able to be here today.

17              THE COURT:  All right.  And Mr. Tucker is with us

18    today.

19              MR. GINSBERG:  Mr. Tucker is seated at counsel table,

20    yes, your Honor.

21              THE COURT:  All right.  And for defendant Muir?

22              MR. BATH:  May it please the Court, Mr. Muir appears

23    in court with counsel, Mark Agnifilo and Tom Bath.

24              THE COURT:  Welcome to you as well.

25              So to set the stage, there were a series of subpoenas
```

1    tendered *ex parte* to the Court February 9.  The Court reviewed

2    them, issued an order, explaining its reasons for not executing

3    the subpoenas.  That was the order filed on February 16, 2017.

4          Thereafter, on February 17, Mr. Ginsberg timely moved

5    for the Court to reconsider.  I ordered the government to

6    respond, which the government has responded, and Mr. Ginsberg

7    has replied.

8          Now there are a lot of things that are not apparent to

9    me from the submissions, but what I hear from the government is

10   that there are five payday lending entities that are raised in

11   the indictment and that the government has obtained the

12   financial and business records of the entities involved in the

13   charged enterprise and provided them to the defendants almost a

14   year ago, or exactly a year ago, a year ago yesterday, and that

15   there is a substantial overlap between that which the defendant

16   seeks and that which has already been produced, from what I can

17   gather, and the government also notes that it's received and

18   disclosed extensive borrower spreadsheets for each of the five

19   payday lending entities, and while it's true that their

20   production does not go as far as December 31, 2016, the

21   indictment, says the government, only charges conduct through

22   August 2013.

23         They also note that with regard to flow of money, the

24   government says that the indictment alleges -- and I'm not sure

25   that there's any dispute on this because I think it's the point

H391tucc

1    that the defense was seeking to establish -- that funds from

2    the payday lending enterprise flowed into bank accounts held in

3    the name of the Indian tribe.

4              So there may be something here that I'm not

5    understanding, but I hadn't a clue of any of this from the

6    defendants' submissions and from reviewing the subpoenas at

7    all.  Are the government's assertions correct, Mr. Ginsberg, or

8    are they making this up?

9              MR. GINSBERG:  Well, they're certainly not making it

10   up.  I'm not accusing them of making it up.  The government's

11   assertions are generally correct.  We just had a meeting before

12   your Honor came out, and largely the problem that I think we've

13   been facing is that the way the material came to the government

14   from their original subpoenas and the way that the government

15   then put that material into some form, format, and then it was

16   eventually turned over in discovery makes it extremely

17   difficult for us to locate the documents, because we're talking

18   about hundreds of thousands or millions of documents, and even

19   narrowing search terms doesn't get us to the material that we

20   wanted to receive by way of subpoena.  The government has now

21   told us they think, for a large amount of that material, they

22   may be in a position to assist us by speaking to members of my

23   staff to sort of pinpoint within the discovery where a lot of

24   this material is.  If they're able to do that, it may obviate

25   many of the subpoenas, not all of the subpoenas.  Some of the

H391tucc

subpoenas may still have to be issued.

           The government has told us, for example, that some of
the banks were only involved for relatively short periods of
time.  They may have all those records, they may not.  But we
need to be certain.  And the government candidly admitted just
because they received them and they're going to tell us where
it is in the discovery, doesn't mean we have to accept
everything that they tell us and not try to go further.

           So I think at this point -- and I'm sorry if it wasn't
clear in the letters.  We tried to make it clear in our first
letter when your Honor denied the issuance of the subpoenas.  I
tried to make it even clearer in my response.  We knew part of
it was a product of our ability to search and find, but this is
a massive -- this is not like a case where there's maybe 500
documents.  It literally took two weeks at one point to locate
a handful of documents that we needed for a particular entity,
and we realized if we continue on that path, we're never going
to have the material.  It may be that we can now speed those
things up and limit the number of subpoenas that we ask the
Court to review and to issue.

           Another part of this, however, going beyond the
financial -- or before I skip over that, the reason that we
wanted the financial records going past the date of the
indictment is that from everything we understand from our
discussions with the government and from the indictment, the

H391tucc

```
 1   government's general position is that the tribes never had

 2   control or ownership of the monies in the sense or the fact

 3   that they were not the lenders and that they didn't own that

 4   portion of the operation, and if that's the case, factually,

 5   then we can't make our argument, our legal argument that if the

 6   tribes were the lenders, there's a sovereign immunity issue.  I

 7   understand that.  Our view is that, to the extent that at least

 8   the Miami tribe, which has reached a nonprosecution agreement

 9   with the government and was allowed to keep many millions of

10   dollars -- and we're not sure of that exact figure, but the

11   nonprosecution agreement required them, it's my understanding,

12   or other terms related to that agreement require them to

13   forfeit certain amounts of money and they were allowed to keep

14   certain amounts of money.  Our view is that they continued

15   operating even after the date of the indictment and the

16   nonprosecution agreement in a way that was consistent with the

17   way they were operating when they were still involved with our

18   client and entities that were involved with our client, which

19   we believe is relevant and would demonstrate their ownership

20   and control of the lending portion of the operation.  The

21   grossest example I could give of that is, if they were

22   permitted to keep $30 million, let's say, as a result of their

23   reaching the nonprosecution agreement, the government says,

24   well, you can keep $30 million and you have to forfeit X, then

25   that money that they kept, they had as a result of their gains
```

H391tucc

1   as the lenders in this payday lending operation would be

2   particularly relevant to what role they had played all those

3   years up until the date of the indictment and may still be

4   playing, although now not involved with our client.  So --

5        THE COURT:  Well, you say it may be relevant, and

6   today is not necessarily the day to decide issues like that.

7        MR. GINSBERG:  Only to address that extra period of

8   time --

9        THE COURT:  I understand.

10       MR. GINSBERG:  -- why after 2013 we still --

11       THE COURT:  Fair enough.  But I guess what comes to my

12  mind is the question as to whether the conduct of the

13  defendants during the time period alleged in the indictment was

14  lawful.

15       MR. GINSBERG:  Correct.

16       THE COURT:  Whether the tribe or tribes are engaging

17  in conduct today in which other people are engaging in unlawful

18  activity or lawful activity is beside the point.  It's not fair

19  game to say anything which is not charged in this indictment is

20  perfectly lawful activity so if it goes on today unindicted,

21  that's the gold standard of what you're allowed to do.  That

22  doesn't, of course, work, and I don't think you're urging that.

23       MR. GINSBERG:  No, I'm not.  I'm not urging that.  I'm

24  urging that it might very well show a continual pattern of

25  operations of the business that existed in 2011, 2012, 2013,

1    and after a nonprosecution agreement, after indictment, it was

2    exactly the same, which I think would be relevant and could and

3    would establish for us that at all times the tribe was in

4    control and ownership of the lending.  So we don't even know in

5    the first instance without the records that postdate the

6    indictment whether that's even a fact.  All we know is, they

7    were permitted to keep some amount of money.  What theory the

8    government believed they were entitled to it, whether the

9    government believed that they were entitled to keep that money

10   because they had earned that money from being involved in the

11   operation generally or from being the lenders, we don't know

12   that.  And so that is important to us.  It may turn out that it

13   becomes an issue that's not relevant.  And your Honor is

14   correct.  We can't stand up at trial and argue, because they're

15   now operating in a lawful or even unlawful way, the government

16   couldn't argue that that is in fact what occurred prior to the

17   date of the indictment.  But without the information, we're not

18   in a position to even begin to determine whether we can make

19   that argument and whether it's a sound argument and whether the

20   Court would be in a position to rule whether it's relevant to

21   show how they continued on after the date of the indictment or

22   after the nonprosecution agreement.  So that only addresses

23   that additional portion of time that postdates the indictment.

24   But beyond that, in the subpoenas, we are also asking for

25   various records of the tribes, not necessarily the financial

H391tucc

1    records but internal documents of the tribes, and the reason

2    for that is that, at least pointing to the Miami tribe, they

3    reached a nonprosecution agreement, and we have a good-faith

4    reason to believe, based upon conversations with witnesses and

5    reviewing certain documents, that although a nonprosecution

6    agreement was signed, there are members of that tribe who were

7    involved in the same operations prior to 2013, during the time

8    that the criminal activity is alleged to have occurred, who had

9    the belief, and may still have the belief, based upon their

10   participation, that what they were doing was in fact lawful and

11   that they were the owners and the lenders, and we believe that

12   that's contained in material that's controlled by the tribe.

13            There's a separate issue which we may have to brief,

14   which is, even though the tribe reached a nonprosecution

15   agreement with the government, the government is telling us --

16   and the lawyer for the tribe may attempt to assert

17   attorney-client privilege as to some of those documents, or

18   other things of that nature, which may need to be litigated,

19   because our view is, if they reached a nonprosecution agreement

20   and there is a limited waiver of the attorney-client privilege

21   that we're aware of and were given a copy of, we should have

22   the rest of the documents and not be limited, so that if a

23   witness from the Miami tribe testifies at trial and says, it

24   was my view at all times that what we were doing was not legal

25   and therefore, given the opportunity, I reached a

H391tucc

1    nonprosecution agreement on behalf of the tribe, for the tribe,

2    but there are others who are on the board of directors who took

3    differing views and those views are contained in materials that

4    were kept by the tribe, we should be able to have those,

5    because it may well be material that we would be able and

6    permitted to use for impeachment purposes.

7              So that's a separate segment of some of the subpoenas.

8    It's a smaller, probably smaller number in terms of the

9    documents we're talking about, but it still is something

10   separate and apart from what the government may have and may be

11   able to point us to in discovery.

12             So I hope that gives a better picture to your Honor as

13   to why each portion of the material we requested was put into

14   the subpoenas.  Based upon our conversation this morning, I

15   think what I would suggest to the Court is that we be given a

16   period of time -- and we'll have to do this quickly -- to work

17   with the government and to see if they can point us directly to

18   most of these financial documents, and we can obtain them from

19   the discovery that we do have.  To the extent that we cannot

20   locate those documents, which for sure would include

21   postindictment documents and the tribal corporate documents, if

22   you will, of all the record materials, we would still like to

23   either resubmit or have your Honor reconsider subpoenas as to

24   that material, and we will move quickly on the material that

25   the government helped us with so that if it turns out we still

H391tucc

don't have everything we need, we can come back to the Court

and say, the government helped us, we found 75 percent of the

material, but we still are missing a certain percentage and we

would like the Court to issue a Rule 17 subpoena so that we can

get the balance of the subpoenas.  Of course the government's

view of the value of the material, in our view, is different,

and the government can, as it conceded earlier today, you know,

they had no reason to know exactly how we were going about

preparing our defense, and when the subpoena issue -- even

though we have had many conversations.  The Court should know,

this case has not moved along in a vacuum.  There have been

many telephone calls, there were in-person meetings to try to

sort out some of the thornier issues.  But it may turn out that

there are things that the government now realizes they didn't

obtain that we want and why we want it, and then it will be a

determination for either the Court to issue the subpoena or, if

the Court does issue the subpoena and we obtain the materials,

then there will be an issue of relevance at trial and so forth.

          But that's how I would suggest we proceed.  It would

be foolish for us -- not just foolish, but I don't think the

Court would be happy if we turned down the offer from the

government.  But we still need to move quickly because the

trial date is not far off, and I didn't read your Honor's

request to have this conference to open the door to my

application again to move the trial date, but that still exists

H391tucc

```
 1   in our mind.  I know what your Honor's ruling was, but even if
 2   we're pointed to these documents and it turns out that there
 3   are tens and tens of thousands of documents, we then can
 4   present them to the forensic accountant and his staff to try to
 5   prepare for us what we believe we need and get an opinion from
 6   them in a timely fashion so that we can absorb it, so that he's
 7   in a position to testify if we need to, and so that we can use
 8   it during the course of the trial.  We haven't yet put in an
 9   additional letter for reconsideration of that.  I'm well aware
10   of the Court's view on trial schedules.  But the Court also
11   knows -- and I'm only speaking for myself here -- I'm not one
12   to shy away from a trial or trial date just to do that.  I
13   don't just come in and say, put it off for four months, because
14   I'm going to go lie on a beach someplace.  I love trying cases,
15   and I try a lot of them.  I just finished last week --
16              THE COURT:  You've tried two before me.
17              MR. GINSBERG:  I've tried two before you.
18              THE COURT:  And neither one of them were particularly
19   short trials.  The first one was a long one; the second one was
20   several weeks, at least.
21              MR. GINSBERG:  Oh, more than that.
22              THE COURT:  Both of them were pretty long, yes.
23              MR. GINSBERG:  Yes.  So I know the Court understands
24   that I'm not doing this, we're not doing this, for purposes of
25   delay.  We're doing this because we have clients to represent.
```

H391tucc

1    And I should mention, when the government says that there was

2    prior counsel involved, and there was, up until, to begin with,

3    June, when Jim Roth was appointed, and then I was brought in

4    and the rest of my staff was brought in, we tried to get up to

5    speed as fast as possible.  The fact, frankly, that prior

6    counsel either didn't think it was necessary or didn't perceive

7    the fact that they would be unsuccessful in convincing the

8    government not to bring an indictment and would need to have

9    all of these documents available in order to go to trial if

10   that were to happen, while it's not the best thing in the world

11   for us, I don't think we should suffer, nor do I think the

12   client should suffer for the fact that nobody, six months ago

13   or eight months ago or a year ago, recognized that this

14   material might be important or relevant and could have gone

15   about trying to obtain it at an earlier date.  Certainly I

16   guess the earliest probably would have been right after the

17   indictment.  It would have been a little harder to try to

18   obtain this material prior to the indictment.  But we're living

19   in the world that we inherited, and we're moving as fast as we

20   can.

21            THE COURT:  All right.  Let me hear from the

22   government.

23            MR. VELAMOOR:  Thank you, your Honor.

24            Let me just discuss a few of the points.  I won't

25   address them all.

H391tucc

1          In terms of the discovery, I think the government has

2     acknowledged from the beginning that the discovery was

3     voluminous.  But I don't want the record to reflect or be

4     allowed to be interpreted as we just dumped millions and

5     millions of pages in a completely unorganized fashion.  We did

6     not do that.  We produced discovery organized by the producing

7     party.  Where there were no Bates numbers, we added them with

8     all the documents.

9          And so for example, we produced documents from each of

10    the banks that are named in the defense subpoenas, organized by

11    bank, and with Bates numbers.  So I think these things have

12    been provided.

13          I'm certainly sympathetic to the notion that it's

14    voluminous.  Sympathetic in part because it has been our task

15    to go through them as well, and it was a task.  But I don't

16    want to leave the impression that we didn't provide some kind

17    of a roadmap, including an index, to the defense to go through

18    that.  But we will, of course, you know, help them navigate

19    these things going forward, as we've done before.

20          In terms of the remaining scope of the subpoenas, we

21    do believe that the scope of what the defense needs is going to

22    be narrowed substantially.  I think that's in part because I

23    think we entered on, you know -- tried to do the same thing

24    that they're trying to do, which is trace the money, and so as

25    a result of that, we were led to some of the same financial

H391tucc

1    institutions and to request some of the same documents, and we

2    requested very broadly documents from these financial

3    institutions, so I do believe that since we're trying to do the

4    same thing as they appear to be trying to do, that we're going

5    to have a lot of these documents.  The agents have prepared a

6    spreadsheet overlapping what they've requested and the date

7    ranges of what we've obtained and provided, so I think we're

8    going to be able to help them do that.  Obviously the

9    production from the main tribe, named tribe, is bigger and is

10   somewhat harder to navigate because it's from one producing

11   party, so many documents, but we've discussed some ways that we

12   can help them do that today.  I plan to turn over to them the

13   production letters that we got from AMG, which in some ways

14   describes by Bates range, which Bates range refers to which

15   specific document requests from our subpoena.  So for example,

16   our subpoena had a request for financial statements.  Their

17   letters say:  With respect to your request, number one, for

18   financial statements, these are Bates ranges.  Perhaps that can

19   help them do that.  We'll identify some of the other documents

20   as well.

21         It seems like where we're likely to be focusing in the

22   end, I think, are documents from these financial institutions

23   beyond the dates that we obtained them, and as well as these

24   internal discussions to the Miami tribe concerning their entry

25   or discussions about entering into an agreement with the

H391tucc

1    government.  So we just address those two issues.

2          In terms of the time frame after the indictment, I

3    don't think that time frame is going to be very broad, because

4    we obtained records after the time frame of the indictment.

5    I'm sure it comes as no surprise to the Court that we were

6    interested in tracing the money and making sure that money we

7    believed were proceeds were not dissipating or disappearing

8    when we fully intended to forfeit and freeze money as part of

9    the case, so we continued to obtain bank records well after the

10   indictment, and in many cases up until the beginning of 2016.

11   It's true we stopped doing that when we indicted, in part

12   because, you know, we entered the same orders freezing some of

13   these accounts at that point.  So I think to the extent they

14   need records after the indictment, they're going to have a lot

15   of what they need already and have had it.  So I don't think

16   there's going to be a lot of that.

17         I'll take the cue from the Court in terms of arguing

18   about whether some of these arguments are relevant.  We

19   certainly have views on those things, both in terms of whether

20   or not the arguments are right and whether or not some of the

21   factual assertions are consistent with our understanding of the

22   facts, but I'll leave that aside.

23         In terms of the internal documents of the tribes

24   concerning their entry into an agreement with us, you know,

25   first of all, I don't believe -- and I think it's quite clear

H391tucc

1   that the state of mind of tribal people as to whether or not

2   they believed they were acting lawfully, even assuming some of

3   them did, I don't think it's relevant here.  We have made a

4   motion *in limine* regarding that in terms of other people's

5   state of mind is not relevant.  What's relevant is the state of

6   mind of the defendants, whether or not they believed they were

7   acting lawfully in part based on the advice that they were

8   given.  I think the Court has become aware of some of that

9   advice.

10        To the extent that the defense is ultimately seeking

11  subpoenas for the purposes of impeachment, I think there is

12  case law out there that makes clear that Rule 17 subpoenas are

13  not appropriate solely for impeachment material.  And so to the

14  extent it boils down to that, you know, we'd ask for an

15  opportunity to provide some of those cases to the Court if the

16  Court needs them, but ultimately this is going to be an

17  exercise in obtaining impeachment material.  I don't think

18  Rule 17 subpoenas are appropriate for that, even leaving aside

19  the fact that there are likely to be privilege issues anyway,

20  so it would preclude any kind of substantial production for

21  that.

22        I'm not sure if there's been a new request to adjourn

23  the trial at this point.  I think we're going to want to be

24  heard on that.  If the Court's entertaining such a request,

25  we'd like to go forward.  We think we should go forward in

H391tucc

1      April.  We're prepared to go forward.

2                 THE COURT:  Let me ask you a question.

3                 MR. VELAMOOR:  Sure.

4                 THE COURT:  When I scheduled this conference, I had no

5      idea that the government was going to file a motion under the

6      crime-fraud exception to the attorney-client privilege for a

7      swath of documents.  Maybe you could tell me where this motion

8      arises at this juncture.

9                 MR. VELAMOOR:  Fair enough.  As we're preparing for a

10     trial, we're reviewing documents more intently, we're

11     exploring, you know, what some of our theories are, where there

12     may be additional evidence out there.  We had some initial

13     discussions with the law firm about producing to us

14     nonprivileged material.  We've not received any response from

15     that.  I think they're waiting for some kind of perhaps

16     permission from the defendants to do that.  But this was,

17     frankly, as we prepared, an idea that, you know, came to us as

18     we prepared, and so we filed it as soon as we could.  I don't

19     expect it to result in any large amount of documents

20     whatsoever, and so --

21                THE COURT:  So, look, Mr. Ginsberg correctly referred

22     to my reluctance to move a set trial date, particularly where

23     there's been a trial date set and moved already.  The Court has

24     to be open-minded and, you know, I would never say never on

25     adjournments.

H391tucc

Why isn't the way that the Court should proceed as
follows -- have a seat and you can both argue with me after you
hear what I have to say.  Between today and March 22nd,
defense counsel and the government would work to get to the
bottom of what defense thinks it doesn't have but the
government thinks the defense does have, and essentially have
the ability to drill down to what are the essentials of the
scope of any trial subpoena.  Following the completion of that
exercise, by March 30th, the defense would do the following:
file a brief, a letter brief in support of its subpoenas,
including the actual text of the proposed subpoenas; also on
March 30th, it would file its opposition to the government's
motion under the crime-fraud exception; April 14th, the
government would respond -- that's two weeks after March 30 --
to the defense position on the Rule 17 subpoenas; and the
government would also reply on its motion on the crime-fraud
exception; and on April 21, the defendant can put in whatever
it wants in reply on the trial subpoena issue.

If subpoenas are going to be issued, if they were
issued today, it's questionable in my mind -- and it's playing
this out to kind of the brink of trial, to see whether or not
the recipient of the subpoena has an application to make before
me for me to deal with that application and to rule.  It just
seems to me that what I'm now faced with -- or maybe I'm now
understanding what I'm faced with and maybe the argument is

H391tucc

1  I've been faced with this since the moment I received the

2  subpoenas.  I don't know.

3          Now I also have the government's crime-fraud motion.

4  It seems to me that I should seriously consider moving the

5  trial date to allow those things to happen, including, if I

6  issue the subpoenas on or about April 24th or so, I have to

7  give the parties upon whom they're served an opportunity to be

8  heard, if they wish to be heard.  I don't know what arguments

9  they're going to raise, whether they're privilege arguments or

10  whether they're sovereign immunity arguments or the like.  But

11  that has to be built into this as well.

12          Why is that not the way I should proceed?

13          First of all, let me hear from Mr. Ginsberg, and then

14  I'll hear from the government.

15          MR. GINSBERG:  I think that's exactly the way the

16  Court should proceed, and I think although maybe we wrote our

17  initial letter in a clumsy or not terribly clear fashion, now

18  that your Honor has seen the other presentations and heard the

19  argument, I think your Honor completely understands the

20  position that we're in, and I think it would be appropriate to

21  move along that schedule, because that way it will give

22  everybody the opportunity to resolve these outstanding issues,

23  to have the material, to be prepared for trial.  And I don't

24  know if the government's going to argue prejudice, but I don't

25  think this is a typical kind of case where an adjournment of

H391tucc

1    the trial would lead to prejudice.  I think the kinds of

2    witnesses that we're going to have in this trial can testify at

3    other dates, and if your Honor's schedule can accommodate us at

4    another date, we certainly will make ourselves available.

5            THE COURT:  Let me hear from Mr. Velamoor.

6            MR. VELAMOOR:  Absolutely.  So I focused today on the

7    fact that we think that the defense has, you know, essentially

8    all the documents that they need.  The government still doesn't

9    think that they've identified any particularly relevant reason

10   why they are likely to recover anything new or anything

11   different from any of these Rule 17 subpoenas, even if such

12   subpoenas turn out to be appropriate down the line.  I think,

13   as the Court pointed out at the outset of today's conference,

14   the original indictment alleged that these bank accounts were

15   nominally in the names of the tribes and Tucker sold them.

16   That has been part of the government's theory since the case

17   was initially charged in March.

18           THE COURT:  So just to cut to the chase here, your

19   position is that I should deny the motion to reconsider on the

20   subpoenas, that as an officer of the court and a prosecutor

21   with your own ethical responsibilities, you're happy to work

22   with defense counsel in identifying documents, but there is

23   nothing here that should be the subject of a subpoena, period.

24   Is that your position?

25           MR. VELAMOOR:  Essentially, yes.  I think, you know,

H391tucc

1    at this stage, for a variety of reasons, we don't see a basis

2    for additional subpoenas at this point, and --

3              THE COURT:  Well, you say "at this point."  That's the

4    problem that the Court has.  I understand "at this point."  But

5    what has been posited here, which is not unreasonable on

6    anyone's part, is that there should be a timeout of some sort

7    so that the government can show the defense that some of their

8    assumptions about what's been produced already is not as dire

9    as they made it out to be and that you may be of some

10   assistance in their locating appropriate documents.  That's

11   what I understand.  And implicit in what you're saying is, at

12   the conclusion of that process, one will know better what it is

13   that may appropriately fall within Rule 17.  Yes?  Isn't that

14   really what you're saying?

15             MR. VELAMOOR:  That's true.  I think part of what

16   we're saying is that, you know, of course we recognize our

17   obligations as an officer of the court.  We're the government.

18   We're a different litigant.  And that's why we're happy to help

19   assist at this stage.  But it almost seems like our offer to

20   help is now -- we've tossed it in an adjournment that, frankly,

21   on its merits, I don't think is appropriate here, given the

22   fact that they have had these documents for a long time.

23             THE COURT:  No.  But the consequence, Mr. Velamoor, of

24   your argument is, really, what I have to be prepared to say is,

25   no subpoena now, no subpoena ever, ever, no matter what happens

H391tucc

as a result of the discussions that the government has with

defense counsel, and now knowing a bit more, I'm reluctant to

do that.  And once I say I'm reluctant to do that, then I have

to construct a process which is orderly to decide if there's

anything.

          Now, I don't know, call me crazy, but it could happen,

I suppose, that after you sit down with defense counsel,

Mr. Ginsberg says, why, that was extremely helpful and now

there's not a possible thing that I can get a subpoena for or

want a subpoena for and so the whole thing evaporates.  I got

that.  What you're urging here is I have some sort of a more

accelerated schedule on this and a more accelerated schedule on

your crime-fraud motion?  Is that what you want me to do?  And

write a decision next week, while I'm trying the Walters case,

on your crime-fraud motion?

          MR. VELAMOOR:  Well, certainly what I'm not going to

do is call the Court crazy.  That we can be confident of.  What

I was going to suggest, though, is that I do think that some of

these things could happen on a faster schedule, at least on the

part of the parties.  I don't --

          THE COURT:  Listen, the thing is, we could shave days

off.  I got that.  But I can't get to a schedule that has all

the issues resolved, it seems to me, by April 17th, when the

sun rises on the morning of April 17th.  That's what appears

to me.  And listen, I'm not here to throw rocks at the

H391tucc

```
 1   defendants or to throw rocks at the prosecution.  I know things
 2   happen in life.  But the reality is, I certainly didn't know
 3   that I was going to get a crime-fraud exception motion plopped
 4   on my desk.
 5        The only client at issue on this is Mr. Tucker, is
 6   that correct?  No one else has an attorney-client privilege at
 7   issue here?
 8        MR. VELAMOOR:  I mean, that's certainly my
 9   understanding.  You know, if Mr. Muir also was a client of that
10   firm, then that would be news to me, but that's certainly not
11   what I understand to be the case.
12        THE COURT:  All right.  Okay.  But in any event, it
13   seems to me that what I'm proposing is the proper way to go.
14   Now if you want to tell me something about something unusual on
15   prejudice, I'm all ears.  Tell me what it is.  Do you have
16   somebody who's about to die?  Do you have somebody who's going
17   to flee the jurisdiction?  Do you have someone of singular
18   importance who is only available on April 18th and will not
19   be available again?
20        MR. VELAMOOR:  I don't think I have an argument like
21   that.
22        THE COURT:  All right.  So I think the thing to do is
23   to go with the schedule which I've outlined.  I hope everybody
24   took notes.  You can buy a copy of the transcript.  It's there.
25   It is the schedule.
```

H391tucc

1          And now let me set about the process of setting a

2     trial date in this case.

3          I could set it realistically to start at a point in

4     time in the month of June or I could put it over to early

5     September, the Monday after Labor Day.  Let me hear from the

6     government and let me hear from defense counsel on those.  So

7     let's say June 19th.  I have a civil case on that day.  I

8     would have to move it.  But June 19th.  And failing that, it

9     would be September 11th, which is a Monday.

10          MR. VELAMOOR:  Well, your Honor, we would strongly

11     request that the Court set the June date.  I think that is

12     entirely consistent with the Court's schedule.  It sounds like

13     the last date you're setting, the Court was setting for the

14     procedure was April 21st.  I think we'll be able to narrow

15     down these issues even before that, but even to the extent it

16     runs to that schedule, they should have plenty of time to work

17     through their issues before June, the date in June.  I would

18     note that at that point that would be well over a year since

19     the initial indictment in this case.

20          THE COURT:  Let me hear from defense counsel.

21          MR. AGNIFILO:  Could we just talk?

22          THE COURT:  Yes.

23          MR. AGNIFILO:  Thank you, Judge.  Thank you.

24          (Defense counsel conferring)

25          MR. GINSBERG:  There are certain scheduling problems,

H391tucc

<pre>
 1   but given what your Honor has decided to do today, I think it
 2   would behoove us not to push this further.  So the real
 3   problems come in the June-July period.  Mr. Bath has two trials
 4   and Mr. Agnifilo has a trial.
 5           MR. AGNIFILO:  I have a trial in front of Judge
 6   Matsumoto in United States v. Martin Shkreli, June 26th.
 7           THE COURT:  Who else has a conflict on the June date?
 8           MR. BATH:  Your Honor, I've got trials set, rape
 9   trials, for July 18th and July 31st, two separate trials.
10   I've also got a family vacation I prepaid for just last week in
11   late June and is paid.  But even if I could get out of that
12   family vacation, those two rape trials got set then because of
13   this trial.
14           THE COURT:  Where are they pending?
15           MR. BATH:  One's pending in -- they're both state
16   cases, Judge.  One's in Franklin County, Kansas, and one is in
17   Douglas County, Kansas.  One's a juvenile case, one's an adult
18   case.  It's possible I could go in and ask them to move those
19   forward.  I mean, like Mr. Ginsberg, I'm not shy, but I've
20   tried two jury trials this year, both over a week already.  I'm
21   not shy about trying cases, Judge, but I had to tell those
22   other courts that this was taking precedence.
23           THE COURT:  Understood.
24           MR. GINSBERG:  I think I can be available.  I have two
25   cases scheduled, but I think they're both going to plead out.
</pre>

H391tucc

1  And I think September I'll definitely be available and free.

2  Out of the other schedules, I think for us, that makes the most

3  sense.  I don't know Mr. Roth's schedule, but I don't think I

4  can impose on your Honor waiting to hear from him.  He'll I

5  guess have to make himself available, and we have other

6  counsel.

7          THE COURT:  All right.  September 11, 2017, at 10 a.m.

8  And I'm going to have you back for a conference in this case on

9  June 16th at 2:30.

10         MR. VELAMOOR:  May I ask a question.  If the

11  government were to withdraw its crime-fraud motion, would

12  that --

13         THE COURT:  You know, I don't do business that way.  A

14  card laid is a card played.  Mr. Velamoor, as the judge does

15  this, you look at what you have in front of you.  Now you want

16  to play -- I think there's a name for it -- Jenga is the name

17  of it, where you pull one piece out and see what happens,

18  whether the tower collapses or not.  I gave you an opportunity.

19  I really did.

20         MR. VELAMOOR:  Certainly.

21         THE COURT:  All right.  So that's what it is.  It's

22  September 11th at 10 a.m.

23         And I'll hear the government's application.

24         MR. VELAMOOR:  Yes, your Honor.  We'd move to exclude

25  time between today and the new trial date for the parties to

H391tucc

1    prepare for trial on that date.

2              MR. GINSBERG:  No objection from the defense,

3    defendant Tucker, your Honor.

4              MR. BATH:  No objection from Mr. Muir.

5              THE COURT:  All right.  I find that the ends of

6    justice will be served by granting a continuance to

7    September 11th and that the need for a continuance outweighs

8    the best interests of the public and the defendants in a speedy

9    trial.  The reasons for my findings are strewn in the record of

10   this proceeding, including the volume of the documents produced

11   in discovery, the possible need for subpoenas in this case, and

12   the pendency of a motion asserting the crime-fraud exception to

13   the attorney-client privilege, and accordingly, the time

14   between today and September 11, 2017 is excluded under the

15   Speedy Trial Act.

16             Anything further from the government?

17             MR. VELAMOOR:  Nothing from us.

18             THE COURT:  All right.  Anything further from the

19   defendants?

20             MR. GINSBERG:  No, your Honor.  Thank you.

21             MR. BATH:  Nothing.  Thank you.

22             THE COURT:  All right.

23             MR. GINSBERG:  Good afternoon.

24             THE COURT:  Thank you.

25             (Adjourned)