```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                               16-cr-91 (PKC)

           -against-                                           MEMORANDUM
                                                               AND ORDER

SCOTT TUCKER and TIMOTHY MUIR,

                      Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

The S1 Indictment (the "Indictment") charges defendants Scott Tucker and Timothy Muir with counts of conspiracy to collect unlawful debts, collection of unlawful debts, wire fraud, money laundering and violation of the Truth in Lending Act related to the collection of usurious interest on so-called "payday loans." (See Docket # 114.) Among other things, the Indictment alleges that Tucker managed and controlled several "payday lending" businesses that were nominally owned by American Indian tribes, including the Miami Tribe of Oklahoma. According to the government, Tucker entered into sham relationships with the Indian tribes in order to invoke tribal immunity and continue lending practices that would otherwise be unlawful.

The government moves for an Order finding that the crime-fraud exception applies to documents and communications possessed by Tucker's attorneys relating to the state-court action of Tucker v. AMG Services, Inc., 10 Civ. 1084 (Wyandotte County, Kansas) ("Tucker v. AMG"). According to the government, Tucker v. AMG was a "sham" lawsuit masterminded by Muir for the purpose of retroactively filing a merger certificate and invoking tribal immunity. The government argues that documents and communications withheld by

Tucker's attorneys at McDowell, Rice, Smith & Buchanan, P.C. ("McDowell Rice"), solely as they pertain to Tucker v. AMG, fall within the crime-fraud exception.

For reasons that will be explained, the Court concludes that the government has shown probable cause that such documents and communications possessed by McDowell Rice were made in furtherance of a crime or fraud. The motion is therefore granted, and McDowell Rice is directed to produce such documents and communications.

DISCUSSION.

The attorney-client privilege applies to confidential legal advice, and "is designed to promote unfettered communication between attorneys and their clients so that the attorney may give fully informed legal advice." See generally In re Richard Roe, Inc., 68 F.3d 38, 39-40 (2d Cir. 1995) ("Roe I"). However, there is a "'well-established'" exception to the privilege when communications are made "'in furtherance of contemplated or ongoing criminal or fraudulent conduct.'" Id. at 40 (quoting In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984)). This exception exists because, unlike in the normal attorney-client relationship, there is no societal interest in communications that "are intended to further the commission of a crime or fraud." Id.

For the crime-fraud exception to apply, the party invoking it "must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed . . . ." Id. Second, the party invoking the crime-fraud exception must demonstrate "that the communications were in furtherance thereof." Id. "With strong emphasis on intent, the crime-fraud exception applies 'only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal activity.' It is therefore relevant to show that the wrong-doer had set upon a criminal course

before consulting counsel." United States v. Jacobs, 117 F.3d 82, 88 (2d Cir. 1997) (quoting In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986)), abrogated on other grounds by Loughrin v. United States, 134 S. Ct. 2384 (2014). "[T]he proposed factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" Jacobs, 117 F.3d at 87 (quoting In re John Doe Inc., 13 F.3d 633, 637 (2d Cir. 1994)).

If "'the very act of litigating is alleged to be in furtherance of a fraud,'" courts apply "a more stringent probable cause standard," and the party seeking disclosure "'must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud.'" In re Grand Jury Subpoenas Dated Mar. 2, 2015, 628 F. App'x 13, 14-15 (2d Cir. 2015) (summary order) (quoting In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir. 1999)); cf. Madanes v. Madanes, 199 F.R.D. 135, 149 (S.D.N.Y. 2001) (the crime-fraud exception may encompass "a 'crime, fraud, or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system . . . .'") (Francis, U.S.M.J.) (quoting Coleman v. American Broadcasting Cos., 106 F.R.D. 201, 208 (D.D.C. 1985)).

According to the Indictment, Tucker has participated in the payday lending industry since the late 1990s, and his businesses issued loans with interest rates that far exceeded state usury limits. (Indictment ¶¶ 4.) The government alleges that beginning in 2003, Tucker entered into sham business relationships with Indian tribes in order to invoke the protections of tribal immunity and evade state usury laws. (Indictment ¶ 20-29.) The Indictment specifically alleges that "to bolster the false appearance of tribal ownership and control" of Tucker's lending

businesses, Muir "caused a sham lawsuit to be filed by SCOTT TUCKER, the defendant, against AMG, despite the fact that AMG was MUIR's client." (Indictment ¶ 28.)

The government's motion annexes documents showing probable cause that Tucker v. AMG was a "sham" lawsuit orchestrated for the purpose of invoking tribal immunity as to defendants' allegedly usurious lending practices. Allegedly, one of Tucker's "payday lending" businesses was CLK Management ("CLK"), a corporation headquartered and incorporated in Kansas. (Indictment ¶ 2.) A June 3, 2008 memorandum from the law firm Fredericks Peebles & Morgan ("Fredericks Peebles") to the CEO of Miami Nation Enterprises discussed the possible acquisition of CLK by "a newly formed Miami Tribal Corporation," which became AMG Services, Inc. ("AMG"). (Gov. Mem. Ex. A.) Like CLK, AMG is alleged to have been controlled by Tucker. (Indictment ¶ 2.) The June 3 memo notes:

> The Miami Tribe has been involved in a protracted litigation with the State of Colorado. Colorado is having difficulty getting past the Tribe's sovereign immunity defense. The State of Colorado has issued a subpoena for information related to CLK's operations related to the cash advance business.

(Id. at 1.) The memo opines that the state of Colorado may be trying to disrupt the Tribe's business by attempting "to apply pressure on CLK, an entity that doesn't have sovereign immunity. It is likely their goal is to apply enough pressure on the CLK so that it no longer makes economic sense to continue in business." (Id. at 2.) It notes that the tribe's new corporation (i.e., AMG) could acquire CLK for $120,000, "creating an entity that may be able to invoke tribal sovereign immunity." (Id.) It notes that "the protection of the current business model by purchasing CLK probably makes economic and legal sense." (Id.)

It appears that, around that same time, AMG acquired CLK in some fashion, although the formalities that would normally attend such a transaction seemingly were not

observed. The government notes that the Miami Tribe did not pay for CLK until June 29, 2010, when it issued a check to Tucker personally for $135,259.17, a sum that included interest. (Gov. Mem. at 3 & Ex. B.) The government also notes that no certificate of merger was contemporaneously filed with the Kansas Secretary of State in 2008, as required by Kansas law. (Gov. Mem. at 3.) And Tucker continued to sign checks under CLK's bank account until at least December 2008. (Gov. Reply Ex. I.)

Two years later, on July 8, 2010, Tucker filed his petition in Kansas state court in Tucker v. AMG. (Gov. Mem. Ex. C.) The petition was signed by a McDowell Rice attorney. (Id. at 6.) It sought an order directing AMG to execute a certificate of merger for its acquisition of CLK, or, in the event that AMG failed to appear in the action, a judicial order directing the Kansas Secretary of State to record a certificate reflecting the acquisition of CLK by AMG, effective June 24, 2008. (Id. at 5.)

Although McDowell Rice represented Tucker in Tucker v. AMG, as recently as May 2010, the bank account of defendant AMG had issued checks to McDowell Rice that were signed by Tucker. (Gov. Mem. Ex. D.) On July 29, 2010, a judge of the Wyandotte County Civil Court issued an order in Tucker v. AMG that found AMG in default, and, among other things, directed the Kansas Secretary of State to record a Certificate of Merger retroactively reflecting a June 24, 2008 merger of AMG and CLK. (Gov. Mem. Ex. E.)

Subsequent e-mails between Tucker and Muir are some evidence that Tucker v. AMG was a sham proceeding orchestrated by Muir. In a series of e-mails dated July 31, 2010, Muir, who was legal counsel to AMG, wrote to Tucker stating, among other things, "They're [sic] only about 10 attys in the country who can really appreciate just how fucking good this is And ALL of us want to be flies on the wall when the opposing attys get this. Lastly, when Pete

- 5 -

talked to an atty at the KS Sec of State's office, she said 'I don't know how you did this….you shouldn't have been able to get this done.'" (Gov. Mem. Ex. F; ellipsis in original.) In a different e-mail that day, Muir wrote to Tucker stating, "This should be the 'Sexual Chocolate' of my legal career……..I should just drop the mic and walk off the stage….." (Gov. Mem. Ex. F; ellipsis in original.) On August 5, 2010, attorney Conly Schulte at Frederick Peebles, who was outside counsel to AMG, e-mailed Tucker stating:

> I wanted to follow up with you to let you know that I think this was one of the more brilliant pieces of legal work I've seen in awhile – Tim [Muir] deserves a huge pat on the back for pulling this one off! Getting a court order directing the Secretary of State to file the articles of merger – with an effective date of June 2008 – within such a short period of time – was just short of miraculous! It will prove to be invaluable in the pending litigation in California (and elsewhere) – and should go a long way to protecting the business model.

(Gov. Mem. Ex. G.)

In a letter of July 26, 2010, Schulte wrote to Tucker's counsel at McDowell Rice concerning <u>Tucker v. AMG</u> in his capacity as attorney for AMG. (Opp. Mem. Ex. A.) That letter stated that AMG would not respond or appear in the <u>Tucker v. AMG</u> matter because it was an instrumentality of the Miami Tribe and therefore "enjoy[ed] . . . sovereign immunity from unconsented suit." (Opp. Mem. Ex. A.) In an August 18, 2010 letter to AMG, Schulte stated that the filing of the certificate of merger in Kansas "is important to Tucker and CLK" because it would establish recognition of AMG's purchase of CLK, "which is vital to protecting the business model of the lending operation." (Opp. Mem. Ex. B.)

In light of the foregoing, the Court concludes that the government has demonstrated that there is probable cause to believe that a crime or a fraud was attempted, and that the communications and documents possessed by McDowell Rice concerning <u>Tucker v.</u>

AMG were in furtherance thereof. The continuation of an unlawfully usurious lending business was the crime or fraud attempted, and the communications and documents concerning Tucker v. AMG were in furtherance thereof because they were part of an effort to baselessly invoke the protections of tribal immunity. As the Second Circuit once observed, "a tribe has no legitimate interest in selling an opportunity to evade state law." Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs., 769 F.3d 105, 114 (2d Cir. 2014).

First, the fact that a grand jury issued the Indictment, including allegations concerning Tucker's purportedly "sham lawsuit" against AMG (Indictment ¶ 28), supports a finding of probable cause that a crime was committed. See United States v. Levin, 2015 WL 5838579, at *4 (S.D.N.Y. Oct. 5, 2015) (Forrest, J.) ("The Grand Jury has returned an Indictment, finding probable cause to charge the defendants with mail and wire fraud. The Government has thus satisfied the first prong of the crime-fraud exception.") (citing Kaley v. United States, 134 S. Ct. 1090, 1097 (2014)); see also Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975) (a grand jury's return of an indictment "conclusively determines the existence of probable cause . . . .").

Second, the record submitted by the government demonstrates probable cause to believe that documents and the communications possessed by McDowell Rice relating Tucker v. AMG were made in furtherance of a crime or fraud. See generally Jacobs, 117 F.3d at 88. As noted, counsel to the Miami Tribe noted that acquisition of CLK may permit CLK "to invoke tribal sovereign immunity" against the state of Colorado. (Govt. Mem. Ex. A.) When the acquisition was purportedly consummated, AMG made no payment for CLK and did not submit the necessary paperwork with Kansas officials. Then, in June 2010, AMG wrote a check to Tucker personally for the CLK acquisition; nine days later, Tucker commenced Tucker v. AMG,

which sought an order directing the Kansas Secretary of State to accept a merger-related filing, effective as of June 2008. (Govt. Mem. Ex. B-C.) Weeks earlier, Tucker had signed checks on behalf of AMG for the payment of legal fees to McDowell Rice – the law firm that now represented Tucker in his claims against AMG. (Gov. Mem. Ex. D.) After default judgment was entered against AMG, Muir, who was AMG's counsel, apparently celebrated the result in his e-mails to Tucker. (Gov. Mem. Ex. F.) AMG's outside counsel at Fredericks Peebles separately e-mailed Tucker to praise Muir's strategy as "invaluable in the pending litigation in California" and helpful to "protecting the business model." (Gov. Mem. Ex. G.)

A "prudent person" would have a "reasonable basis to suspect" that Muir and Tucker orchestrated Tucker v. AMG in order to facilitate a retroactive filing that would permit the invocation of tribal immunity. See generally Jacobs, 117 F.3d at 87. The government's showing comfortably satisfies the "more stringent probable cause" standard applied to "the very act of litigating," because a prudent person would have a reasonable basis to suspect that there was little or no basis to pursue Tucker v. AMG except in furtherance of invoking immunity as to the allegedly usurious lending scheme. See generally In re Grand Jury Subpoenas Dated Mar. 2, 2015, 628 F. App'x at 14-15.

"Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court." Jacobs, 117 F.3d at 87. Often, in camera review is favored when there has been only a "minimum showing" about whether the communications were in furtherance of a crime or fraud. See generally id. at 87-88; see also Levin, 2015 WL 5838579 at *5 (opting to conduct an in camera review when "the Court does not believe that the result is so obvious such that it would be appropriate to order defendants to immediately produce the documents at issue to the Government.").

In this instance, the government has comfortably made a showing of probable cause that McDowell Rice's communications related to Tucker v. AMG were in furtherance of a crime or fraud. This evidence includes communications between the defendants and the attorneys of AMG, Tucker's purported adversary. The Court therefore concludes that in camera review is unnecessary, and that documents and communications related to Tucker v. AMG withheld by McDowell Rice pursuant to the attorney-client privilege shall be produced to the government. The Court expresses no view as to whether McDowell Rice or any of its attorneys were complicit in any crime or fraud committed by their client.

CONCLUSION.

The government's motion is GRANTED. (Docket # 153.) McDowell Rice is directed to produce the documents and communications relating to Tucker v. AMG within 14 days of this Order. The Clerk is directed to terminate the motion.

SO ORDERED.

_____  
P. Kevin Castel  
United States District Judge

Dated: New York, New York  
June 6, 2017