Beverly Van Ness, Esq.
233 Broadway, Suite 2704
New York, NY 10279
212-274-0402
bvanness.law@gmail.com

February 26, 2019

<u>Via ECF</u>

Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

       Re: <u>United States v. Scott Tucker</u>
        16 CR 91 (S1) (PKC)
      Application for Bail Pending Appeal

Dear Judge Castel,

  I respectfully submit this application for Mr. Tucker's release from prison pending appeal.

  As the Court is aware, post-conviction detention is required unless the defendant establishes,"by clear and convincing evidence," that he "is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal, [or] . . . an order for a new trial." 18 U.S.C. § 3143(b)(1). If the defendant meets this burden, he "shall" be released. <u>Id.</u>; see <u>United States v. Abuhamra</u>, 389 F.3d 309, 319 (2d Cir. 2004).

  There can be no dispute that the first two conditions are satisfied. After the guilty verdict on October 13, 2017, the Court allowed Mr. Tucker to return home to Kansas, continuing the bail status granted before and during trial: "a $2 million personal recognizance bond, cosigned by three financially responsible persons . . . and secured by residential property in Leawood, Kansas" (T. 3358). Forfeiture of the Leawood house was stayed by the Court "pending the outcome of the appeal" (<u>see</u> order dated June 11, 2018, ECF #358), so title remains with the Tuckers. The Court also imposed two new conditions, "home confinement with electronic monitoring and strict supervision" (T. 3363).

  Aware that he faced significant jail time, Mr. Tucker complied with all the conditions imposed (<u>see</u> PSR ¶ 14), and returned to be sentenced on the appointed date in January. There was only one reason he was remanded then, instead of returning to Kansas and self-surrendering

there, as Mr. Muir was allowed to do: defense counsel had previously expressed a concern that Mr. Tucker might possibly harm himself, out of depression over his situation. This concern had dissipated by the date of sentencing per defense counsel, but, mindful of the suicide of Mr. Tucker's brother years earlier, the Court decided to remand him. See S. 35-38; PSR ¶ 15. There was no suggestion that he posed any danger to others, or was a flight risk. During the ensuing months of his incarceration, I have had frequent contact with Mr. Tucker and his wife. He is interested in the appeal, and I have no concern about his harming himself.

There is also no question as to whether Mr. Tucker pursued his appeal "for purpose of delay." With the Court of Appeals' consent, he and Mr. Muir obtained reasonable, modest extensions of time to file their opening and reply briefs, and the government's time to respond was extended by Mr. Muir's successful motion to file a supplemental brief pro se. The Tucker briefing was completed on January 31, 2019 (February 4th for Mr. Muir), and the briefs' length and depth reflect a number of substantive issues.

That leaves the final factor: whether the appeal raises a substantial question of law or fact likely to result in reversal or an order for a new trial. The resolution of this issue in the defendant's favor does not require the Court to make a finding that "its own judgment is likely to reversed on appeal." United States v. Randell, 761 F.2d 122, 124-25 (2d Cir. 1985). Rather, "a substantial question 'is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way.'" Id., at 125, quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985). The Court of Appeals also endorsed the Third Circuit's definition: a substantial question is "one which is either novel, which has not yet been decided by controlling precedent, or which is fairly doubtful." 761 F.2d at 125, quoting United States v. Miller, 753 F.2d 19, 23 (3d Cir. 1985).

I am filing with this application copies of Mr. Tucker's opening brief, the government's brief, and our reply brief. I believe we have raised numerous "substantial" questions in the context of this novel prosecution of internet lending across many jurisdictions. The defense rested on defendant's belief that the interest rates were lawful under the National Bank Act and well-established principles of tribal sovereignty. The lending models were themselves novel, and not only were there no extant decisions finding they violated state usury laws, Mr. Tucker had also received legal advice that they were lawful.

One important appellate issue is our claim that, with respect to the hotly-disputed mens rea element of the racketeering counts – whether the defendants had acted "willfully" in agreeing to participate in the collection of unlawful debt (count one) and participating in the collection of unlawful debt (counts two through four) – the jury was given an erroneous instruction: the defendants could be found to have acted "knowingly and willfully" if it was shown they knew the rate of interest charged for the loans. Since they clearly did, this charge was effectively a directed verdict of guilt (see opening brief, pp. 35-41).

The government's efforts to defend this instruction, arguing that it did not undermine the Court's earlier definition of "willfully," cannot be credited. See Tucker's reply brief, pp. 5-10.

The earlier definition – "willfully" means to act "with a purpose to do something that the law forbids. The defendant need not have known that he was breaking any particular law, but he must have been aware of the generally unlawful nature of his act" – was the bedrock of the defense. The defendants contended they believed the loans were lawful because they were extended by Indian tribes, sovereign nations that had incorporated tribal entities to engage in pay day lending, charging tribal interest rates enacted by tribal ordinances. Yet the "bad purpose"/"aware of unlawful nature" definition of "willfully" was only referenced in connection with an element common to all three conspiracy charges (intentionally joining). It was not linked to the mens rea element of the racketeering charges specifically, including racketeering conspiracy. Instead, the Court gave the instruction cited above.

We have raised several additional issues that, along with the charge error cited above, served to deprive the defendants of the right to present their defense. The claims are based on additional jury charge rulings by the Court and the preclusion of relevant defense evidence that undermined the defense and endorsed the government's theory of guilt (see Tucker opening brief, pp. 41-64; reply brief, pp. 10-26).

Our claims include the giving of unbalanced instructions on tribal sovereignty and sovereign immunity, and the denial of a theory of defense charge reflecting these principles (opening brief, pp. 41-47; reply, pp. 10-14). Additional charge issues are discussed in our opening brief, pp. 47-50 and reply brief, pp. 14-18. We also challenge the exclusion of expert testimony that would have provided background and context to the concept of tribal sovereignty and the structure of tribal businesses, particularly those that partner with non-Indian companies (opening brief, pp. 60-62; reply, pp. 21-22), as well as the date limitation imposed for advice of counsel testimony (opening, pp. 57-60; reply, pp. 23-26). Finally, we contend that the special interrogatory given to the jury, asking whether the lender was Mr. Tucker or an entity owned or controlled by him, was improper. The factors the jury was told to consider favored the government exclusively and encouraged a guilty verdict. Since the subject of the interrogatory was not necessary to a finding of guilt, as even the government conceded, there was no legitimate reason to ask the question (opening brief, pp. 50-56; reply, pp. 18-20).

We have also addressed the prejudice of the errors, including cumulative harm (opening brief, pp. 53-55, 62-65; reply, p. 20), and countered the government's stripped down view of the record and contention that there was overwhelming evidence of guilt (see reply brief, pp. 1-4, citing evidence set forth in Tucker's opening brief). All of the errors have been preserved for appellate review, and the government's burden to establish they are harmless is a heavy one (opening brief, pp. 53, 62). Given the constitutional underpinnings of our claims, and the concerted damage caused to the defense, it is unlikely the government will prevail.

All of the issues have been fully vetted in the briefs, which I respectfully request the Court to review. When Mr. Tucker sought a stay of execution of forfeiture in early June, 2018, he could only provide a spare and conclusory description of the issues he expected to raise on appeal (ECF #355, p. 5 of 11). The stay was denied because the Court concluded the likelihood of success on appeal was low (ECF # 358). The issues are now specific and developed, as are the

government's opposing arguments which we have replied to, and I ask the Court to reconsider Mr. Tucker's prospects of obtaining a new trial. I believe more than one "substantial question" has been presented. As previously noted, to obtain release on appeal, we are not required to establish that Mr. Tucker's convictions will be reversed. Instead, we need only show, by clear and convincing evidence, that the appeal raises at least one issue that is "'of more substance than would be necessary to a finding that it was not frivolous. . . .   a 'close' question or one that very well could be decided the other way.'" United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985). Resting on the briefs filed in the Court of Appeals, I believe this burden has been met.

Finally, Randell also obligates us to show that the issues raised on appeal, if decided favorably to Mr. Tucker, are likely to result in relief on all counts of conviction. 761 F.2d at 125. This burden has also been met. The wire fraud counts were based on alleged deceptions by the defendants, including as to the identity of the lender. As discussed earlier, the defendants maintained they believed the loans were made by the tribes, with rates enforceable under tribal law. The errors we complain of undermined this state of mind defense, and unfairly bolstered the government's contention that Mr. Tucker was the true lender as he well knew. As with the racketeering counts, a conviction for wire fraud also required a finding that defendants had acted "willfully and knowingly," as well as "with the specific intent to defraud" (T. 3303, 3306-07); intent to defraud meant "to act willfully, and with the specific intent to deceive" (T. 3307). Defendants' good faith was explicitly charged as a defense (T. 3311). As the case was presented to the jury, a finding that defendants had not acted in good faith, and had instead acted willfully – with a bad purpose to do something the law forbids and aware of the generally unlawful nature of their conduct – was unfairly encouraged.

If the wire fraud convictions are reversed, the money laundering convictions must be vacated as well. The laundering counts were based on the illegal proceeds of the wire fraud (T. 3314, 3319). The TILA counts, in turn, required a finding that the defendants had acted willfully (T. 3321). As discussed, the errors we have raised affected the jury's consideration of this critically important issue. Moreover, Mr. Tucker was sentenced to concurrent terms of 12 months for these misdemeanor offenses, and he was remanded on January 5, 2018. Since the TILA sentences have been fully-served, these convictions have no affect on his application for release on bail. Cf. 18 U.S.C. § 3143(b)(1)(B)(iv).

For the reasons stated, Mr. Tucker's bail application should be granted. Thank you for your consideration.

                    Respectfully,

                    /s/_____
                    Beverly Van Ness
                    Appellate Counsel for Scott Tucker