UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                          16-cr-91 (PKC)

           -against-                      OPINION AND ORDER

SCOTT TUCKER,

                 Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

           Kim Tucker, the now ex-wife of defendant Scott Tucker, has filed a petition and

an amended petition to vacate the Final Order of Forfeiture entered by this Court on February 22,

2019.  See 21 U.S.C. § 853(n); Rule 32.2(c), Fed. R. Crim. P.  She asserts that the Final Order of

Forfeiture wrongfully includes four items of property in which she has a lawful ownership

interest, specifically including one investment account maintained with Charles Schwab

Corporation ("Charles Schwab") and one maintained with the Midwest Trust Company

("Midwest"), and parcels of real property located in Leawood, Kansas and Aspen, Colorado.

Kim Tucker represents herself pro se.

           After Kim Tucker filed her petition, the parties engaged in discovery, including

the taking of Ms. Tucker's deposition.  The government now moves to dismiss the petition and

amended petition as untimely filed, and for summary judgment in its favor as to Kim Tucker's

claim directed to the Leawood, Kansas property, pursuant to Rule 56, Fed. R. Civ. P.

           Any petition for an ancillary proceeding directed to an order of forfeiture must be

filed within 30 days of the government's final notice of publication, or within 30 days of the

petitioner's receipt of actual notice of the assets to be forfeited, whichever is earlier.  21 U.S.C. §

853(n)(2).  Here, Kim Tucker filed her first petition on April 13, 2019, more than ten months after the government concluded its publication of the forfeiture notice on May 23, 2018.

For the reasons that will be explained, the petition and amended petition will therefore be dismissed as untimely.  Separately, even if the petitions had been timely brought, no reasonable finder of fact could find that Kim Tucker has demonstrated an interest in the Leawood, Kansas property that warrants vacateur or modification of the forfeiture.  The government's motion for summary judgment on Kim Tucker's claim directed to the Leawood property will therefore be granted.

BACKGROUND.

An indictment filed on February 9, 2016 charged defendant Scott Tucker with various crimes related to his ownership and operation of certain payday-lending businesses.  (Docket # 1.)  He entered a plea of not guilty on February 23, 2016.  On April 8, 2016, this Court issued a Post-Indictment Restraining Order as to certain specified assets.  (Docket # 30.)

Following trial, on October 13, 2017, a jury found Scott Tucker guilty of all fourteen counts charged in the S1 Indictment.  (Docket # 259.)

On February 13, 2018, the Court entered a Preliminary Order of Forfeiture, which ordered the forfeiture of "any property, constituting or derived from, any proceeds obtained, directly or indirectly, from the unlawful collections of debt charged in Counts One, Two, Three, and Four of the Indictment . . . ."  (Docket # 336.)  This Order listed properties including any and all funds in a Charles Schwab account with account number 97363826 (the "Charles Schwab Account"); any and all funds in a Midwest Trust Company account with account number

10840017641 (the "Midwest Account"); and all right and title to real property in Aspen, Colorado and Leawood, Kansas.[1]  (Docket # 336.)

On March 16, 2018, Scott Tucker filed an objection to the Preliminary Order of Forfeiture, asserting, among other things, that two IRA accounts in the name of Kim Tucker ought not to be included in the Order.  (Docket # 342.)  That objection did not challenge the inclusion of the Schwab and Midwest accounts now in dispute, nor of the properties in Aspen or Leawood.  (Id.)  The government thereafter agreed to remove the IRA accounts from its forfeiture application, and, on April 17, 2018, the Court entered an Amended Preliminary Order of Forfeiture that omitted the IRA accounts.  (Docket # 344.)

On April 24, 2018, the government published at www.forfeiture.gov a Notice of Forfeiture identifying all properties listed in the Amended Preliminary Order of Forfeiture, including those now challenged by Kim Tucker.  (Docket # 374.)  The publication advised third parties claiming an interest in the properties that they "must file an ancillary petition within 60 days of the first date of publication (April 24, 2018) . . . ."  (Id.)  The notice was continuously published for 30 days, through May 23, 2018.  (Id.)  Separately, on May 1, 2018, notice of the Amended Preliminary Order of Forfeiture was sent by Federal Express to Kim Tucker at both an address in Leawood, Kansas and a Post Office Box in Overland Park, Kansas.  (Ravi Dec. Ex. H.)  The accompanying cover letter advised her of the deadlines to assert a legal interest in the properties pursuant to 21 U.S.C § 853(n).  (Id.)

On June 11, 2018, the Court entered an Order that stayed execution of the forfeiture of the Leawood, Kansas property, pending the outcome of Scott Tucker's appeal of his judgment and conviction.  (Docket # 358.)

---

[1] These account numbers are publicly filed in the Preliminary Order of Forfeiture and elsewhere, and are part of the public record.  (See, e.g., Docket # 336, 376.)

On November 13, 2018, Kim Tucker e-mailed one of Scott Tucker's attorneys, Nadjia Limani, inquiring about the distinction between a preliminary forfeiture order and a final order of forfeiture.  (Ravi Dec. Ex. K.)  Ms. Limani responded that after the filing of the preliminary order, certain parties had submitted third-party petitions claiming interest in the properties identified therein, and stated that she was "not concerned" that Kim Tucker's IRA accounts would be re-added to the list of properties to be forfeited.  (Id.)  Kim Tucker replied that she had spoken to an attorney who she was unable to retain, and was advised that she should file a petition as well: "The attorney I spoke with, but could not afford, said I should file one of those petitions as some of they money they are taking is my money unrelated to Scott."  (Id.)

On February 21, 2019, the Court entered a First Final Order of Forfeiture, which included all right, title and interest in the Midwest Account, the Schwab Account and the Aspen property.  (Docket # 376.)  The government states that the Schwab and Midwest accounts have since been liquidated and that the Aspen property has been placed on the market.  (Docket # 433 at 5.)

On April 13, 2019, Kim Tucker, proceeding pro se, filed a petition asserting "a vested interest" in certain properties listed in the Final Order of Forfeiture, specifically asserting an interest in $1,000,000 of the funds deposited in the Schwab Account, all funds in the Midwest Account and $100,000 in the value of the Leawood, Kansas property.  (Docket # 388.)  She claimed that she contributed approximately $100,000 to purchase of the Leawood, Kansas property, and that a portion of the funds in the Charles Schwab Account and that all funds in the Midwest Account were earned through her own employment.  (Id.)  The petition did not claim an interest in the Aspen, Colorado property.

In an Order of July 19, 2019, the Court adopted a proposed discovery schedule on Kim Tucker's motion, with discovery specifically focused on Kim Tucker's interest in the Leawood, Kansas property.  (Docket # 404.)  The government took the deposition of Kim Tucker on December 6, 2019.  (Ravi Dec. Ex. T.)

After the close of discovery, Kim Tucker filed an amended petition.  (Docket # 424.)  That motion seeks 50 percent of proceeds from the Leawood, Kansas property; 50 percent of proceeds from the Aspen, Colorado property; and 50 percent of the value of the Charles Schwab and Midwest accounts.  (Id.)

On March 3, 2020, the government filed a motion to dismiss the petition and amended petition, or, in the alternative, a motion for summary judgment in its favor.  (Docket # 433.)  Its motion included the notice required to a pro se party pursuant to Local Civil Rule 56.1.  (Docket # 435.)  Kim Tucker filed a response on April 22, 2020.  (Docket # 438.)

The Court of Appeals for the Second Circuit affirmed Scott Tucker's judgment and conviction in a written decision dated June 2, 2020.  United States v. Grote, 961 F.3d 105 (2d Cir. 2020).  The Mandate issued on October 22, 2020.  (Docket # 440.)

DISCUSSION.

I.  The Petitions Are Dismissed as Untimely.

A.  Legal Standard.

"It is . . . well settled that section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets – after the preliminary forfeiture order has been entered."  DSI Assocs. LLC v. United States, 496 F.3d 175, 183 (2d Cir. 2007); see also Libretti v. United States, 516 U.S. 29, 44 (1995) ("Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by

means of the hearing afforded under 21 U.S.C. § 853(n).”); De Almeida v. United States, 459

F.3d 377, 381 (2d Cir. 2006) (“An ancillary proceeding [under section 853(n)] is evidently

the only avenue for a post-indictment third-party claim to forfeited property . . . .”) (emphasis in

original).

      Section 853(n)(1) requires the government to publish notice of an order of

forfeiture:

> Following the entry of an order of forfeiture under this section, the
> United States shall publish notice of the order and of its intent to
> dispose of the property in such manner as the Attorney General may
> direct. The Government may also, to the extent practicable, provide
> direct written notice to any person known to have alleged an interest
> in the property that is the subject of the order of forfeiture as a
> substitute for published notice as to those persons so notified.

21 U.S.C.A. § 853(n)(1).  A third party who asserts a legal interest in property subject to

forfeiture “may, within thirty days of the final publication of notice or his receipt of notice under

paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of

his alleged interest in the property.”  21 U.S.C. § 853(n)(2).

      Where “a third party files a petition asserting an interest in the property to be

forfeited, the court must conduct an ancillary proceeding . . . .”  Rule 32.2(c)(1).  “In the

ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for

failure to state a claim, or for any other lawful reason.  For purposes of the motion, the facts set

forth in the petition are assumed to be true.”  Rule 32.2(c)(1)(A).  “[A] motion to dismiss a third-

party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a

motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). “  Pacheco v.

Serendensky, 393 F.3d 348, 352 (2d Cir. 2004).

A court may permit discovery as to the petitioner's claim, after which a party may move for summary judgment under Rule 56, Fed. R. Civ. P.  Rule 32.2(c)(1)(B).  "Only after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a <u>prima</u> <u>facie</u> case of entitlement, but not before."  <u>Pacheco</u>, 393 F.3d at 352.  If the petition is not resolved through motion practice, it is to be adjudicated through a hearing.  Rule 32.2(c)(1)(B).

The petitioner has the burden to prove her legal right, title or interest in the property by a preponderance of the evidence.  21 U.S.C. § 853(n)(6); <u>United States v. Watts</u>, 786 F.3d 152, 160 (2d Cir. 2015).  Specifically, the petitioner must prove that "the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section . . . ."  21 U.S.C. § 853(n)(6)(A).

      **B.  The Petitions Are Dismissed as to the Midwest Account, the Charles Schwab**
         <u>**Account and the Aspen Property.**</u>

As noted, on April 24, 2018, the government posted notice of the Amended Preliminary Order of Forfeiture to the website www.forfeiture.gov, which listed all property subject to forfeiture and advised third parties of their rights to commence an ancillary proceeding under section 853(n) and Rule 32.2.  (Docket # 374.)  It stated that any person wishing to commence an ancillary proceeding "must file an ancillary petition" within 60 days of April 24, 2018.  (<u>Id.</u>)  The notice remained posted online for 30 days, through May 23, 2018.  (<u>Id.</u>)  Kim Tucker disputes that she had any knowledge of the online publication or of the forfeiture.gov website.  (Docket # 438 ¶ 17.)

The government separately sent copies of the notice to Kim Tucker via Federal Express to an address in Leawood, Kansas and a Post Office Box in Overland Park, Kansas.

(Ravi Dec. Ex. H.)  The cover letter, dated May 1, 2018, advised her that any petition under

section 853(n) must be filed within 30 days of her receipt of actual notice or the final publication

of notice (i.e., May 23, 2018).  (Id.)  Kim Tucker disputes that she received the notice addressed

to the Post Office Box, and denies knowledge of the existence of the P.O. Box.  (Docket # 438 ¶¶

12-13.)  On February 22, 2019, the Court entered a Final Order of Forfeiture, which included the

forfeiture of all right, title and interest in the Midwest Account, the Schwab Account and the

Aspen property.  (Docket # 376.)

> Kim Tucker's petition is untimely as to the Midwest Account, the Charles

Schwab Account and the Aspen property.  She filed the petition on April 3, 2019, more than ten

months after the final date of publication of notice.  The petition therefore falls beyond the

statutory 30-day deadline to submit a petition to adjudicate the validity of her alleged interest in

the properties.  21 U.S.C. § 853(n)(2) (petition must be filed "within thirty days of the final

publication of notice") (emphasis added); see also DSI Assocs., 496 F.3d at 183 ("It is . . . well

settled that section 853(n) provides the exclusive means by which a third party may lay claim to

forfeited assets — after the preliminary forfeiture order has been entered.").

> Judge Engelmayer dismissed a third party's ancillary petition on timeliness

grounds in United States v. Afriyie, 2017 WL 6375781, at *4 (S.D.N.Y. Dec. 11, 2017).  There,

a third party moved to vacate a final order of forfeiture, well after publication of the preliminary

orders of forfeiture and six months after the final order of forfeiture issued.  Id. at *3-4.  Judge

Engelmayer explained the section 853(n) provided the exclusive vehicle to vacate a forfeiture

order, and concluded that "[b]ecause [the movant] failed to timely pursue a § 853(n)(2) hearing,

[it] may not now assert a legal interest in the forfeited property."  Id. at *4

Several courts of appeals, including the Second Circuit, have suggested or concluded that the failure to submit a petition within the 30-day period extinguishes a petitioner's right to commence an ancillary proceeding.  See United States v. Crew, 704 Fed. App'x 30, 32 (2d Cir. 2017) (petitioner "failed to file a petition asserting a legal interest in the property within 30 days 'of the final publication of notice or his receipt of notice,' or in fact ever, and he was therefore barred from intervening to challenge the forfeiture or order of sale.") (summary order); United States v. Lamid, 663 Fed. App'x 319, 325 (5th Cir. 2016) ("Courts have routinely held that the deadline in section 853(n)(2) is mandatory.") (summary order); United States v. Marion, 562 F.3d 1330, 1339 (11th Cir. 2009) ("A third party then has thirty days from the receipt of notice of the preliminary forfeiture order or the final publication of notice of the latter, whichever is earlier, within which to petition the court for an ancillary hearing. . . .  The failure to file a petition within this thirty-day time period extinguishes a third-party's interests.").  The advisory committee notes to Rule 32.2(c) similarly state that "if a third party has notice of forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the court enters the final order of forfeiture."

The Court acknowledges, and accepts as true, Kim Tucker's assertion that she did not receive written notice sent to the Post Office Box in Overland Park, Kansas, and that she was unaware of such Post Office Box.  (Docket # 438 ¶¶ 12-13.)  The Court also accepts as true her assertion that she did not review the online publication of the notice of preliminary forfeiture and was unfamiliar with the forfeiture.gov website.  (Id. ¶ 17.)  This does not relieve her of the statutory obligation to submit a timely petition under section 853(n)(2).  The record reflects that Kim Tucker was attentive to the forfeiture proceedings and the potential forfeiture of assets in which she claimed ownership, including the IRA accounts that she successfully requested,

through counsel to Scott Tucker, to be excluded from the Preliminary Order of Forfeiture.  (Ravi

Dec. Ex. E; Tucker Dep. 68-70 (testifying that she discussed forfeited assets with Scott Tucker's

counsel and the IRA accounts specifically)).)  At the latest, she had actual notice of the

Preliminary Amended Order of Forfeiture in November 2018, when she e-mailed her inquiry to

Scott Tucker's attorney.  (Ravi Dec. Ex. K.)

   The government's motion to dismiss the Petition and the Amended Petition as

untimely will therefore be granted as to the claimed interest in the Charles Schwab Account, the

Midwest Account and the Aspen property.

   C. Kim Tucker Has Not Set Forth a Basis for Relief Under Rule 60(b).

   Rule 60(b), Fed. R. Civ. P., provides that, on motion, the court "may relieve a

party or its legal representative from a final judgment, order, or proceeding" for certain

delineated reasons, including for excusable neglect.[2]  Affording Kim Tucker special solicitude as

a pro se petitioner, the Court construes her petition as requesting relief under Rule 60(b) as an

alternative basis to vacate or modify the Final Order of Forfeiture.

   For the reasons largely explained, Kim Tucker's submissions do not set forth a

basis for relief under Rule 60(b).  "[W]here a party fails to act with diligence, [s]he will be

unable to demonstrate that [her] conduct constituted 'excusable neglect.'"  State St. Bank & Tr.

Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 177 (2d Cir. 2004).  The record

demonstrates that Kim Tucker had notice of the properties listed the Preliminary Order of

Forfeiture, and that, with the assistance of Scott Tucker's counsel, successfully attained

---

[2] Other bases for Rule 60(b) relief include mistake, inadvertence, surprise, newly discovered evidence, fraud, satisfaction of judgment, or "any other reason that justifies relief," Rule 60(b)(1)-(6), which courts have construed to require a showing of extraordinary circumstances.  See, e.g., Gonzalez v. Crosby, 545 U.S. 524, 535 (2005).  None of these alternative bases for relief plausibly applies to Kim Tucker's petitions.

modification to remove certain IRA accounts from the list of forfeited properties.  Though she disputes that she received notice of the publication of the Amended Preliminary Order of Forfeiture, subsequent e-mails with Scott Tucker's counsel indicate her awareness of the forfeiture proceedings, as well as advice from an unretained attorney suggesting that she file a petition claiming an interest in certain properties.

Construing the submissions in favor of Kim Tucker in light of her status as a <u>pro se</u> litigant, the Court concludes that she has not made a showing of excusable neglect sufficient to warrant relief under Rule 60(b).

II.     <u>The Petitions Are Dismissed as to the Leawood, Kansas Property.</u>

A.  <u>The Petitions Were Not Timely Filed as to the Leawood Property.</u>

The Leawood, Kansas property is in a somewhat different procedural position, as no final order of forfeiture has been entered.  As noted, on June 11, 2018, the Court stayed execution of forfeiture of the Leawood property pending the outcome of Scott Tucker's appeal.  (Docket # 358.)  The Court entered the stay following the entry of the Amended Preliminary Order of Forfeiture and its publication.  No final order of forfeiture has yet been filed as to the Leawood property.

For the reasons already explained, however, Kim Tucker's petitions are nevertheless untimely as to her claimed interest in the Leawood, Kansas property.  The Leawood property was listed in the Amended Preliminary Order of Forfeiture, and it was listed in the government's online publication and the notice sent to Kim Tucker by the government.  Kim Tucker's petition and amended petition were filed well after the 30-day period to petition for an ancillary proceeding.  21 U.S.C. § 853(n)(2); <u>see also</u> <u>Afriyie</u>, 2017 WL 6375781, at *4; <u>Crew</u>, 704 Fed. App'x at 32.  That the final order of forfeiture has not yet been entered does not alter

the timeliness analysis.  See Rule 32.2(c), Advisory Committee Notes ("if a third party has notice of forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the court enters the final order of forfeiture").

The petitions' claims as to the Leawood property are therefore dismissed.

B.  The Government's Summary Judgment Motion Is Granted as to the Leawood Property.

Even if the petitions were timely filed as to the Leawood property, the government has come forward with evidence that no reasonable finder of fact could find that Kim Tucker has a legally cognizable interest in the property that is superior to that of Scott Tucker.  In opposition, Kim Tucker does not point to evidence that would permit a finder of fact to conclude that she has a superior ownership interest in the Leawood property.  The defendant's summary judgment motion will therefore be granted as to the Leawood property.

As noted, a party may move for summary judgment after the conclusion of discovery in an ancillary proceeding.  Rule 32.2(c)(1)(B).   Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 U.S. 241, 244 (2d Cir. 2004).  If the moving party meets its burden, "the nonmoving

party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'"  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Simsbury-Avon Pres., 575 F.3d at 204 (internal citation omitted).

To be entitled to relief, Kim Tucker must prove by a preponderance of the evidence that she "has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section."  21 U.S.C. § 853(n)(6)(A).

Kim Tucker's first petition claims an interest in $100,000 of the Leawood property and her second petition claims a 50% interest in the property.  In her response to interrogatories submitted by the government, she asserts that her interest in the property "is both

financial and marital," and is supported by Kansas marital law.  (Ravi Dec. Ex. S at 1.)  She also

asserts that she personally "paid construction costs on numerous occasions," totaling $1,745,332,

and lists assorted dates, vendors and amounts contributed.  (Ravi Dec. Ex. S at 1-7.)

      In her deposition taken by the government, Kim Tucker acknowledged that in

proceedings with the Federal Trade Commission, she stated that the Leawood property had been

purchased with money earned by Scott Tucker.  (Ravi Dec. Ex. T at 116-17.)  In those FTC

proceedings, she stated in a sworn interrogatory "that the source of funding for the purchase[] of

the residence in Leawood, Kansas . . . were monies earned by her husband Scott Tucker . . . ."

(Ravi Dec. Ex. V at Response 7.)  In her deposition, she testified that her statement to the FTC

was only "partially accurate" and "not completely accurate," and testified that "[i]t's inaccurate

in that some of the money that was used to purchase the house was money earned by me" and

that "[a] portion of the funds that were used to build the house were from my earnings."  (Ravi

Dec. Ex. T at 117-18, 120.)  Kim Tucker also testified that she did not know what portion of the

house was constructed from her earnings.  (Id. at 119-20.).

      Thus, Kim Tucker has expressly stated, in a sworn submission to the FTC, that

monies earned by Scott Tucker were the source of funding for the Leawood, Kansas property.

Though she now claims that she in fact contributed to the property, she has not pointed to

financial records or other evidence that would tend to show that her right, title or interest in the

Leawood property is superior to Scott Tucker's.  A party may not defeat a summary judgment

motion based on conclusory, unsupported statements that contradict their prior sworn testimony.

See, e.g., In re: Fosomax Prods. Liability Litig., 707 F.3d 189, 193 (2d Cir. 2013); Philpott v.

State Univ. of New York, 805 Fed. App'x 32, 34 (2d Cir. 2020) ("Conclusory statements and

affidavits that contradict the party's previous sworn testimony cannot defeat summary

judgment.") (internal citations and quotation marks omitted).  The Court therefore concludes that the government has pointed to evidence that entitles it to relief as a matter of law, and that, in opposition, Kim Tucker has not pointed to evidence from which a reasonable trier of fact could rule in her favor.  Summary judgment is therefore warranted as to her claimed right to the Leawood property.

In addition, in her interrogatory responses, Kim Tucker stated that the source of her funds spent on the Leawood property were derived from $2,645,186 in total income from payday lending businesses owned by Scott Tucker, except for $47,218 in proceeds from the sale of a home she purchased before her marriage.  (Ravi Dec. Ex. S at 9-10.)  The government states that Kim Tucker did not produce any records reflecting the source of her income, and she has submitted none in opposition to the motion.  (Govt. Mem. at 28 n. 11.)  However, assuming the accuracy of Kim Tucker's figures and statements, they are nevertheless evidence that the Leawood property was purchased with revenue obtained through the criminal activities of Scott Tucker.  Drawing every reasonable inference in favor Kim Tucker as the non-movant, a reasonable trier of fact could not rule in her favor on the section 853(n) petition.

The government's motion for summary judgment will therefore be granted.

CONCLUSION.

The government's motion is GRANTED in its entirety.  The petitions of Kim Tucker are dismissed.  The Clerk is directed to terminate the motion and the amended petition. (Docket # 424, 431.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 24, 2020