# Exhibit "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

UNITED STATES OF AMERICA,

- v -

SCOTT TUCKER and TIMOTHY MUIR,

Defendants.

------------------------------------- x

No. 16-CR-91 (PKC)

Motion to Vacate, Set Aside,
or Correct Sentence
Pursuant to 28 U.S.C. § 2255

## AFFIDAVIT OF SCOTT TUCKER

I, SCOTT TUCKER, upon penalty of perjury, state as follows:

1. Prior to January of 2014, I retained Paula M. Junghans of Zuckerman Spaeder LLP to assist me with tax-related legal matters. I retained her for this due to her expertise in the area of tax law.

2. In or about January of 2014, I learned that I was being investigated for federal criminal charges in the Southern District of New York.

3. In January of 2014, shortly after learning that I was being investigated for federal criminal charges, I retained Paul Shechtman of Zuckerman Speader LLP to represent me, along with Paula Junghans, in the federal criminal investigation that led to charges being filed against me in the Southern District of New York.

4. Paula Junghans and Paul Shechtman of Zuckerman Spaeder LLP represented me throughout the federal criminal investigation that led to charges being filed against me in the Southern District of New York in 2016.

1

5. I hired Paul Shechtman to represent me because of his experience as an Assistant United States Attorney in the Southern District of New York, including serving as Chief of Appeals and Chief of the Criminal Division, and because of his expertise in handling white-collar criminal matters for over 30 years at both the state and federal level.

6. I hired Paula Junghans to represent me because of her experience as the Acting Assistant Attorney General of the Tax Division of the U.S. Department of Justice and her expertise in handling complicated tax and white-collar criminal matters for over 40 years.

7. It was my intention for both Paula Junghans and Paul Shechtman and their firm, Zuckerman Spaeder LLP, to represent me throughout both the investigation and trial in this matter in the Southern District of New York.

8. I wanted both Paula Junghans and Paul Shechtman and their firm, Zuckerman Spaeder LLP to represent me at trial in the above-listed matter because, in addition to their experience as mentioned above, they had both represented me throughout the entire investigation and were therefore familiar with this complicated case.

9. I paid Zuckerman Spaeder LLP a total of over 10 million dollars in fees and retainers to represent me in the criminal investigation and all proceedings against me in the Southern District of New York and other ongoing legal issues I was facing.

10. It was my understanding that the fees and retainer I paid to Zuckerman Spaeder LLP would be used not only for Paula Junghans' and Paul Shechtman's attorneys fees, but also as funds for Zuckerman Spaeder to have additional attorneys work on this case and retain experts to assist in reviewing documents and preparing for trial.

11. When I paid these fees and retainer to Zuckerman Spaeder, I did so based on the understanding that it would secure my representation by Paula Junghans and Paul Shechtman

through the conclusion of the trial in this matter.

12. Because of their involvement with this matter throughout the entire investigation process, which began in January 2014, Paula Junghans and Paul Shechtman were aware of all legal issues I was facing in all state and federal courts in the United States, including the possibility that the government would attempt to freeze some or all of my assets. I specifically discussed with them the possibility of the government trying to freeze some or all of my assets prior to the time when the government actually froze such assets. Paula Junghans and Paul Shechtman undertook their commitment to represent me at trial in this matter with the full knowledge of all legal issues, including a possible asset freeze, I was facing.

13. Paula Junghans and Paul Shechtman entered their appearances on my behalf in this matter.

14. After the Nevada court entered an order allowing the FTC to freeze my assets, Neither Paula Junghans nor Paul Shechtman ever discussed with me the possibility of challenging this freeze order, filing for some funds to be released for attorney's fees, or any other legal challenge to ensure I had continued access to legal funds.

15. I did not want Paula Junghans, Paul Shechtman, or Zuckerman Spaeder LLP to withdraw as my counsel in this matter.

16. I was unable to consult with another attorney regarding Paula Junghans' and Paul Shechtman's request to withdraw as my counsel in this matter.

17. Paula Junghans and Paul Shecthman withdrew from representation of me in this matter against my wishes.

18. I did everything in my power to pay the retainer and legal fees for Zuckerman Spaeder LLP and had in fact paid such retainer. It is my understanding that the only reason these

3

16. I was unable to retain any other attorneys

funds were taken from Zuckerman Spaeder is because of the illegal restraint on my assets conducted by the FTC. After my funds were illegally restrained, I had no access to any of my funds with which to replace the seized retainer with Zuckerman Spaeder LLP.

19. During the trial in this matter, a hearing was held outside the presence of the jury in which I was advised that my lead trial counsel, Lee Ginsberg, had a potential conflict of interest as he was currently cooperating with the United States Attorney for the Southern District of New York (the same office that was prosecuting me) regarding a case in which he was the alleged victim of blackmail by a former client. Present at this hearing were my CJA attorneys Lee Ginsberg, James Roth, and Nadjia Limani; attorneys for the government; a court reporter; and possibly other parties and/or attorneys for other parties. I do not know the exact date of this hearing, but it was after the presentation of evidence had commenced and before the case was given to the jury for deliberation.

20. During this separate hearing regarding Lee Ginsberg's potential conflict of interest, I was offered the opportunity to have Lee Ginsberg, including his associate Nadjia Limani, removed as counsel due to the potential conflict of interest.

21. When I was offered the opportunity to have Lee Ginsberg removed as counsel, it was my understanding that if he were removed, I would have to proceed immediately with the ongoing trial with only James Roth, Lee Ginsberg's second chair, as my trial counsel.

22. Although I was not comfortable with Lee Ginsberg representing me due to his potential conflict of interest, I felt that it would be worse to proceed with only James Roth as trial counsel as he had not prepared to be the lead attorney in this matter for trial.

23. When I was offered the opportunity to have Lee Ginsberg removed as counsel, I did not believe that a continuance or adjournment of the trial was possible.

4

24. I was not offered the opportunity to consult with a neutral attorney regarding the decision of whether to have Lee Ginsberg continue representing me. Rather, I had to rely solely on the advice of my current trial counsel (including Lee Ginsberg) in making this decision.

25. I was not informed of Lee Ginsberg's potential conflict of interest and/or given the opportunity for him to be removed as my counsel prior to the start of trial, although it is my understanding that his conflict of interest arose before the trial began.

26. I observed Lee Ginsberg to be distracted and inattentive throughout the trial in this matter. For example, at one time, Mr. Ginsberg left the courtroom during the direct examination of a witness he later cross-examined. He was constantly checking his personal phone throughout trial and I believe he was distracted and inattentive due to the personal issue he was facing in which he was cooperating with the United States Attorney for the Southern District of New York.

27. Further Affiant sayeth not.

_____          2-22-22
**SCOTT TUCKER**                                                Date