UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                     DECLARATION OF
                                                   LEE GINSBERG

    -v-

                                                   No. 16-CR-91 (PKC)

SCOTT TUCKER and TIMOTHY MUIR,

               Defendants.
-------------------------------------------------------X

I, Lee Ginsberg, under penalty of perjury, states as follows:

1. I am an attorney licensed to practice in the State of New York.
2. I was admitted to practice in 1973.
3. I am admitted to practice in the United States District Court for the Southern District of New York and was so admitted prior to, during and after the time of the above entitled action.
4. I was appointed to represent Scott Tucker in the above entitled matter.

## CONFLICT ISSUE

5. During the time of my representation of Mr. Tucker I was blackmailed and defrauded by a former client of mine.
6. I and my counsel reported the matter to the United States Attorney's Office for the Southern District of New York and subsequently met with representatives of that office and law enforcement agents.
7. It was eventually determined that a conflict hearing needed to be held on every case that I had then pending in the Southern District of New York. The government developed a conflict letter that was to be utilized by each judge before whom I had a case pending.
8. At or about the time it was determined conflict hearings were to be held I advised every client of such hearing. I do not have a specific recollection as to the date I

first advised Mr. Tucker but it would have been as soon as I was made aware that the conflict existed and hearings would be conducted.

9. My best recollection is that this occurred early in the trial.
10. I do recall Judge Castel brought the parties into a different courtroom from the one in which the trial was to take place and advised Mr. Tucker about the conflict.
11. I believe that the court determined that Mr. Roth could act in the capacity of an independent advisor to Mr. Tucker as to the conflict issue. I further recall that they spoke privately for some period of time to discuss Mr. Tucker's decision.
12. Mr. Tucker was clearly upset and appeared to have a difficult time exercising his choice as to proceed with myself and Ms. Limani, as well as Mr. Roth or only Mr. Roth.
13. Further, Mr. Tucker alleges in his petition various observations about my being distracted during the trial and, in essence, not paying sufficient attention to the evidence.
14. I was undoubtedly upset by the sequence of events that had unfolded for me, blackmail, fraud, engagement with a government investigation and the conflict ("Curcio") hearings.
15. As to specific allegations that I absented myself from the courtroom during a substantial period of time on the direct examination of a witness whom I later cross-examined, I have no recollection of that occurring.
16. As to checking my cell phone periodically during the course of the trial, while I have no specific recollection, it would not be unusual for me to check my phone for messages or emails during court breaks.

## RETAINED COUNSEL ISSUE

17. Mr. Tucker alleges that none of his appointed counsel made any applications to the court regarding the funds that had been frozen in separate and collateral proceedings.
18. He is correct in that allegation.
19. I was aware of the issue regarding Mr. Tucker's funds being frozen and Tucker's desire to have his retained counsel, whom I hold in the highest regard to continue to represent him.

20. I was also relatively familiar with the efforts that were being made by retained counsel in New York and, I believe, in Kansas City, to have funds released for Mr. Tucker's defense.

21. Further, I was aware that retained counsel had requested a postponement of the case before Judge Castel in order to have additional time to try to obtain funding for the defense.

22. Finally, on this subject, I was aware that the court denied the application to postpone the matter and was apparently cognizant of Mr. Tucker's professed desire to have retained counsel represent him at the trial. Nevertheless, the court denied the request for additional time and appointed CJA counsel.

23. In sum, neither I nor, Mr. Roth made an application to the trial court regarding the frozen assets as it was my belief that the issue regarding the funds was being separately litigated in other forums and retained counsel had made efforts with the trial court regarding the funds and regarding the timing of the proceedings in the Southern District.

## RESOURCE ISSUE

24. As to proper CJA funding to review materials and/or retain experts I stand by any comments made to the trial court prior to and during the trial such as those cited by Mr. Tucker.

25. Undoubtedly, there was an overwhelming amount of discovery and other material to review in this complicated case of what appeared to be first impression in the District.

26. I do recall numerous status conferences prior to trial in which counsel continued to press the government to timely provide expert witness information, including underlying documents, charts and other materials to which we believed we were entitled to and which were slow in coming.

## CHARGE ISSUE

27. Tucker also raises the issue regarding specific portions of the jury charge which the Second Circuit apparently believed were not preserved properly for appeal.

28. I vividly recall many arguments with the court as to the particular issue that was the subject of appellate review.

29. It has always been the defense contention that objections to the charge, particularly the offending portion regarding *mens rea* was timely made by counsel, particularly, Beverly Van Ness. Written objections were filed with the court before the charge conference and filed, again, after the charge conference and before the charge was read to the jury. (See, Affirmation of Beverly Van Ness, January 4, 2023, filed as Document 503 on ECF)

DATED: New York, New York
February 1, 2023

_____
LEE GINBERG